Phillips
v.
Hall.

PHILLIPS & BROWN *vs.* HALL and others.

TRESPASS *de bonis asportatis* lies for *levying* upon the property of A. under an execution against B. and requiring the engagement of a *receiptor* that the property shall be forthcoming, or the amount of the execution paid; although there has been *no removal* of the property, and the receiptor permits the party to remain in possession, and to dispose of it as his own.

The party whose property has been levied upon, and who has indemnified the receiptor, is in such case entitled to recover the full amount of the sum agreed to be paid by the receiptor, in case of the non-delivery of the property.

In an action by the sheriff against the receiptor, *it seems,* that the latter, where he has permitted the party to remain in possession, and use the property as his own, would be *estopped* from denying the right of the sheriff; it would be otherwise where he is deprived of the property by force, or by operation of law.

THIS was an action of *trespass de bonis asportatis,* tried at the Tompkins circuit in January, 1830, before the Hon. SAM-UEL NELSON, then one of the circuit judges.

The sheriff of Tompkins, by virtue of an execution in favor of Hall & Montross, two of the defendants in this cause, against one Michael Phillips, levied upon a store of goods belonging to Asa Phillips and Moses C. Brown, the plaintiffs in this cause, which goods had shortly previous to the levy been transferred by Michael Phillips to the plaintiffs, and which transfer the plaintiffs in the execution alleged to have been fraudulently made. At the time of the levy there was a large quantity of lumber piled near the store, and other property on the premises, all of which, as well as the goods in the store, Phillips & Brown claimed they had bought of Michael Phillips. The attornies of the plaintiffs in the execution, who also were made defendants in this suit, offered to leave the goods in the store unmolested, provided Phillips & Brown would turn out or shew other property belonging to Michael Phillips, on which a levy might be made to satisfy the execution, which they refused to do, claiming to have bought *all* the personal property of Michael Phillips. The sheriff then demanded a receiptor for the goods in the store, and Phillips & Brown accordingly procured two persons to give a receipt to the sheriff, acknowledging

to have received sundry articles of dry goods, groceries, hardware and crockery, the usual assortment of a country store, and promising to re-deliver the same to the sheriff or pay the amount of the execution, viz. $630,13, with interest, and on receiving such receipt, the sheriff *left the goods as he found them.* Phillips & Brown indemnified the receiptors, remained in possession of the goods, and went on with their business, as merchants, selling out their goods by retail, retaining in their possession at the time of the trial of this cause only a portion thereof which remained unsold. Evidence was given by both parties relative to the fairness of the transfer from Michael Phillips to Phillips & Brown. It was proved, that subsequent to the time of the levy of the defendants' execution, the personal property of Michael Phillips (other than the goods in the store) which had been claimed by the defendants as purchased by them, was sold under an execution in favor of a third person, and bought in by Asa Phillips as the agent of the plaintiff in that execution. It also appeared that the *receiptors* had been sued a few days before the trial of the cause, on the receipt given by them to the sheriff. The defendants asked the judge to charge the jury that there having been *no removal of the goods*, Philips & Brown remaning in possession of the same, and they having gone on with their business, trespass *de bonis asportatis* could not be maintained, and if the action did lie, that the plaintiffs were entitled to recover only nominal damages ; and also, that by their claim of being the purchasers of *all* the personal property of Michael Philips, the plaintiff having prevented the present defendants from levying on such property, they were not entitled to recover ; or if they were entitled to recover, that such unfounded claim ought to mitigate the damages. Instead of so directing, the judge so charged the jury that the possession of the goods was changed by the levy and the taking of the receipt ; that in contemplation of law, the goods were in the possession of the sheriff or his receiptors, and that the plaintiffs were entitled to recover the full amount of the sum expressed in the receipt, with the interest thereof, as they were holden to the receiptors on their indemnity, provided the jury should be of opinion that the sale from Michael Phillips to the plaintiffs was *bona fide ;* and in relation to the

claim of the plaintiffs to the other personal property of Michael Phillips, upon which the sheriff might have levied but for such claim the evidence was material only in passing upon the *bona fides* of the transfer of the goods in the store; that in such respect it was important, but if that transfer was fair and honest, and no fraud contemplated, the plaintiffs were entitled to recover the amount specified in the receipt, notwithstanding their false claim to the other property; and he submitted the question of fraud to the jury, who found a verdict for the plaintiffs for $653,81. The defendants having excepted to the charge of the judge, moved for a new trial.

*J. A. Collier*, for the defendants. The reason for a recovery in *trespass* to the full amount of property taken is, that by the recovery, the property is vested in the defendant against whom the verdict is rendered, if such verdict be paid. 13 Mass. R. 225. Cowen's Tr. 667, 669. 9 Mass. R. 258. 7 Cowen, 278. Here the defendants never can obtain the property; it remained in the possession of the plaintiffs; and though, after verdict and satisfaction, the present defendants would have a right of action against the present plaintiffs, they ought not to be driven to that course; to prevent circuity of action, the plaintiffs should not have been permitted to recover more than nominal damages. The liability of the receiptors, and the indemnity given to them by the plaintiffs, cannot be urged as a reason against such a course, because the receiptors, or the present plaintiffs in their stead, might have shewn that the goods levied upon were not the property of the defendant in the execution, under color of which the levy was made. 7 Cowen, 294. 9 Mass. R. 204. 7 Cowen, 670, n.

*J. A. Spencer*, for the plaintiffs. Had the levy been abandoned, the facts of the plaintiffs' remaining in possession, and using the property as their own, might have been considered in mitigation of damages; but instead of abandoning the levy, the receiptors were sued, as was shewn on the trial, and from a record now produced (and the counsel produced it) it appears that judgment was obtained against them. That *trespass* or *trover*, or either, would lie in a case like this, the coun-

sel cited 7 Johns. R. 254, 302; 10 id. 172; 10 Mass. R. 125; 1 Cowen, 322; 5 id. 323. 7 id. 294.

ALBANY,
Jan. 1832.

Phillips
v.
Hall.

*By the Court,* SUTHERLAND, J. The charge of the judge was correct on both its branches. The levy by the sheriff and the taking a receiptor, changed the possession of the goods in contemplation of law ; it was a conversion of them to the use of the defendants. To maintain *trover* or *trespass de bonis asportatis,* evidence of an actual forcible dispossession of the plaintiff is not necessary ; any unlawful interference with the property, or exercise of dominion over it, by which the owner is damnified, is sufficient to maintain either action. This is abundantly settled by numerous cases in relation to the action of *trover.* 1 Chitty Pl. 151, 2, 3, and cases there cited. *Bristol* v. *Burt,* 7 Johns. R. 254. 6 Mod. 212. 4 Term R. 260. 6 East, 538. 6 Bac. Abr. 677. *Reynolds* v. *Shuler,* 5 Cow. 325, where all the cases are collected. *Trover* and *trespass* are concurrent remedies for most illegal or tortious takings. 1 Chitty Pl. 169. 3 Willes, 336.

In *Gibbs* v. *Chase,* 10 Mass. R. 125, the plaintiff, as deputy sheriff, had levied an execution upon a quantity of timber as the property of one Robbins ; after such levy the defendant, also an officer, seised and sold the same timber under process against one Ordway, as his property, and forbid the plaintiff from selling or intermeddling with it ; but the timber was not actually removed from the place where the plaintiff left it ; it was held that this was a tortious disturbance of the legal possession of the plaintiff for which trespass would lie. The court say, " He who interferes with my goods and without any delivery by me, and without my consent undertakes to dispose of them, as having the property general or special, does it at his peril, to answer me the value in *trespass* or *trover ;* and even a subsequent tender of the goods, will not excuse him, if I choose to demand the value."

But the recent case of *Wintringham* v. *Lafoy,* 7 Cowen, 735, was in all its circumstances, essentially like the case at bar. and *trespass de bonis aportatis* was there sustained. The defendant in that case was a constable, and by virtue of an execution against one Gallis, had levied upon certain articles

of jewelry in the store occupied by him, which the plaintiff proved belonged to him. The defendant made an inventory, and said he would remove the goods unless security was given that they should be set forth coming to answer the execution; security was accordingly given, and the articles were not removed, but left in the store in the same condition as the officer found them. The action was sustained on the ground that the dominion which the defendant undertook to exercise over the property, by levying upon it, and exacting security for its forth coming, constituted him a trespasser, he having no legal authority to intermeddle with it. That case is decisive upon this point, and establishes the doctrine that where the taking or intermeddling is *tortious* either *trover* or *trespass de bonis asportatis* may be maintained.

It was not a case for nominal damages. If the plaintiffs were entitled to recover at all, they had indemnified the individuals who became security to the officer for the goods, and the sureties had been prosecuted; and we are to intend that they either have been, or will be compelled to pay the value of the goods to the sheriff, for the benefit of those of the defendants who were plaintiffs in the execution. In *Edson v. Weston*, 7 Cowen, 278, it was held that a *receiptor* to the sheriff (as a surety of this description is commonly termed) was a naked bailee, and was responsible only for gross negligence; and the property having been taken out of his possession by a paramount title, to wit, an execution levied upon it before it came to the defendant's possession, it was decided that he was not responsible. But I apprehend it would be gross negligence in a bailee of this description, to leave the property in the possession and under the control of the person from whom it had been taken, and if it was wasted or sold, he would be responsible; such is this case. Such a defendant would be estopped from denying the right of the party to the property. He could not set up a title to it in a third person. If taken from him by act of law, or perhaps by force, he may not be responsible on the ground that he is a naked bailee. A receiptor of chattels has no property in them; he cannot maintain trover for them in his own name; he is but the servant or agent of the sheriff; 7 Cowen, 294, and cases there cited; still

his promise is founded on a good and sufficient consideration ;
it is obligatory upon him, and may be enforced. The plain-
tiffs in the execution having prosecuted the receiptor, it is not
for them to allege that they cannot recover ; and if the receipt-
or is made to pay, he can undoubtedly resort to the indemni-
ty given to him by the present plaintiffs.

The claim set up by the plaintiffs to other and distinct par-
cels of the personal property which once belonged to the de-
fendant in the execution, though unfounded and even fraudu-
lent, would not deprive them of their right of action, or dimin-
ish the amount which they were entitled to recover for the
property actually belonging to them, and which was illegally
taken by the defendants. The goods in question were not min-
gled with the other property ; the goods were in the store ; the
other property was lumber and lying out doors. The cases
referred to have no application. 7 Mass. R. 123. 3 Johns.
Cas. 84.

New trial denied.