## (*) FERNALD *&* als. versus CHASE.

There can be no conversion of property by a defendant, without an actual possession of it, or the exercise of such a claim of right or of dominion over it, as assumes a right to hold the possession or to deprive the other party of it.

To make out a conversion, there must be proof of a wrongful possession, or of the exercise of a dominion, in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand.

A mere declaration of ownership, without the taking of any possession, or the exercise of any dominion, does not constitute a conversion.

Thus, a declaration by an officer that he has attached personal property, without proof that he has taken possession, or exercised any dominion or control of it, does not amount to a conversion.

Neither will such a declaration, though made by the officer when in contact with the property, accompanied by a counting of the articles, and followed by a return of an attachment on the writ, and by certifying a copy of such return to the town clerk, and by the taking of an accountable receipt for it as property attached, justify a ruling, as *matter of law,* that there has been a conversion.

ACTION OF TORT against the sheriff, founded upon the alleged unlawful act of his deputy in attaching upon a writ against a third person certain saw-logs, cut upon the forest land owned by the plaintiffs as mortgagees. The writ contained a count in trover and three counts in trespass. The general issue was pleaded and joined.

At the trial and at the argument, the defendant's counsel contended and submitted to the Court, that though under the statute the writ might be brought either in trover *or* trespass, it could not rightfully combine counts in both.

At the time when the act of the deputy was committed, the logs were frozen into the ice in township No. 8, which adjoins the town of Monson.

The case, (whether on Exceptions or on Report does not appear,) details the evidence introduced by the parties.

So far as necessary to present the legal question decided in the case, the evidence tended to show, *that* Doughty and Jackson had jointly cut and hauled the logs under a permit from the mortgagor; *that* the deputy had in his hands

Fernald *v.* Chase.

for service a writ in favor of Eveleth & Huston, against Doughty; *that*, in company with one of those plaintiffs, he went to the logs, walked upon them, counted them, and declared to Jackson and some others who were present, that he attached them on a writ against Doughty; *that* he neither moved or marked any of them, nor committed the care of them to any one; *that* he returned upon the writ that he had attached them; *that* he took an accountable receipt for the same; *that* he filed a certificate of the attach-. ment in the office of the town clerk of Monson; *that* he never afterwards saw the logs or interfered with them in any manner; that they remained in that situation about ten days, when the attachment was discharged by an arrangement between the parties to that suit, and notice of it was given to Jackson; *that* Doughty, by the procurement of Huston, after the ice broke up, drove the logs down the river.

HOWARD J., instructed the jury, that if the deputy went on to the logs, counted them, attached them, took a receipt for them, returned them on the writ as attached, filed a copy of his return in the office of the town clerk of Monson, the attachment was valid as between the plaintiffs and the officer, and that these plaintiffs could not have afterwards lawfully taken possession of the logs, except by civil process, without making themselves legally responsible; and that those proceedings on the part of the officer constituted an interruption and interference with the exercise of the plaintiff's rights, although they did not incur expense or trouble thereby, and that that interruption and interference constituted a conversion of the logs, for which trover was maintainable.

*Fox*, for the plaintiffs.

*Willis & Fessenden*, for the defendant.

SHEPLEY, C. J. — The action of trover is founded upon an allegation, that the property came into the possession of the defendant; and yet it is not always necessary to

prove, that the defendant has had the actual possession of it.  There can be no conversion without an actual possession or the exercise of such a claim of right, or of dominion over it, as assumes, that he is entitled to the possession or to deprive the other party of it.  It is upon this principle, that a demand of property, and a refusal to deliver it, does not amount to proof of a conversion, unless the person, of whom it is demanded, has the power to deliver it, or to cause it to be delivered.  *Young* v. *Smith,* 1 Camp. 440.

The mere declaration of a person, that he is the owner of property, without any proof that he has taken possession of it, or has exercised any dominion over it, cannot amount to a conversion.  The element is wanting of actual possession or of the exercise of dominion.  So the declaration of an officer, that he has attached property, without proof that he has taken possession of it or exercised any actual control or dominion over it, will not amount to a conversion.  It can be at most but a claim of special property in it, or of a lien upon it, which is less than a claim to be the owner o it.

To make out a conversion, there must be proof of a wrongful possession, or of the exercise of a dominion over it, in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand.

Such will appear to be the law, by an examination of some of the decided cases.

In the case of *Baldwin* v. *Cole,* 6 Mod. 212, it appeared, that the tools of a workman were detained to compel him to continue to work in the Queen's yard.  A demand and refusal, and subsequently a tender and refusal, were proved.  HOLT, C. J., said, the very refusal of goods to him, that has a right to demand them, is an actual conversion.  "For what is a conversion but an assuming upon one's self the property and right of disposing of another's goods.

In the case of *McCombie* v. *Davies,* 6 East, 538, it appeared, that certain tobacco was in the King's warehouse to

be delivered to the owner upon payment of duties. It had been purchased by a broker for the plaintiff; and the broker had conveyed and pledged it to the defendant as security for money advanced. A demand had been made for it on the defendant, who refused to deliver it without payment of the amount advanced. The tobacco was entirely subject to the defendant's control upon payment of duties, and no person could obtain it without his order. This was held to be a conversion of it.

In the case of *Cuckson* v. *Winter*, 2 Man. & Ry. 313, it appeared, that the defendants had distrained the plaintiff's goods and had proceeded to sell them, but none of them were removed from his premises, and they were all finally restored to him under an arrangement for that purpose.

The decision was, that a conversion was not proved, because the goods though sold were never removed to the interruption of the plaintiff's possession, and were ultimately left in his possession.

In the case of *Mallalien* v. *Laugher*, 3 C. & P. 551, the defendant, by a precept issued from the sheriff's court of London, caused the plaintiff's trunks to be attached on March 31, 1828, as the property of Knight & Fossett, in the hands of one Smith, their garnishee. One of the defendants, an officer, went to the warehouse of the garnishee and delivered to him a paper containing a notice of an attachment, "and having done this, he laid his hands on the trunks and said, I attach these as the property of Knight & Fossett. He afterwards put his seal upon them." The attachment was withdrawn on April 28, following. BEST, C. J., remarked, in the present case, the man does not remove the goods, he leaves them still as they were in the possession of Smith, and I do not think, that is enough to support an action of trover.

In the case of *Woodbury* v. *Long*, 8 Pick. 543, it appeared, that the goods attached had been removed to a barn at a small distance, where they remained when the action was commenced. Upon such a state of facts, the opinion says,

"the attachment was a tortious act, which in itself was a conversion according to the well settled principles of law and uniform practice."

In the case of *Baker* v. *Fuller*, 21 Pick. 318, it was held, that a keeper of goods attached by an officer by delivering them to another person, who claimed to be the owner, did an act equivalent to a conversion. He thereby disposed of the goods in defiance of the rights of those from whom he received them.

The case of *Murray* v. *Burling*, 10 John. 172, is similar in principle.

In the case of *Miller* v. *Baker*, 1 Met. 27, the action was trespass. The goods were attached; a keeper was put over them; and he testified, that he kept them thirteen days, and then delivered them to the attaching creditors. There did not appear to have been any manual taking or removal. The acts were held to be sufficient to maintain the action, on the ground of an exercise of authority over the goods, against the will, and to the exclusion of the owner. It is apparent, that the case exhibits an actual control of the goods by the aid of a keeper.

In the case of *Leonard* v. *Tidd*, 3 Met. 6, it appeared that a gun, the property of the plaintiffs, was deposited by a person in their employment with the defendants, as security for a debt. It was sold by the person who deposited it, with the defendant's consent, and they received the purchase money. This was not considered to be a conversion by them.

In the case of *Bristol* v. *Burt*, 7 John. 254, it appeared, that the defendant refused to permit the plaintiff to remove his goods from the store of one Wentworth, where they were deposited; and that he stationed armed men near that store to prevent it. This was held to be a conversion upon the position of an exercise of dominion over them in exclusion or in defiance of the plaintiff's rights.

In the case of *Reynolds* v. *Shuler*, 5 Cow. 323, the goods appear to have been distrained for rent in arrear, and to

have been sold to pay it, while they remained without removal in the plaintiff's coal house. This also was held to be a conversion on the ground of an exercise of dominion over them in exclusion or defiance of the plaintiff's rights.

In *Wentringham* v. *Lafoy*, 7 Cow. 735, the original action was trespass. The plaintiff in error, as a constable, having a *fi. fa.* against the goods of one Gallis, levied on articles of jewelry in possession of Gallis, who placed the articles on a glass case, so that the constable might examine them and ascertain their value; and he made an inventory of them, and said he would remove them, unless security was given that they should be forthcoming to answer the execution. The security was given and the articles were left. The constable was held to be liable as a trespasser, on the ground that " every unlawful interference by one person with the property or person of another is a trespass."

The action was trespass also in the case of *Phillips* v. *Hall*, 8 Wend. 610, which was pronounced to be, in all essential circumstances, like the case of *Wintringham* v. *Lafoy*.

The case of *Bailey* v. *Adams*, 14 Wend. 201, was trover for a wagon. A constable levied on it as the property of one Collier, while it was in the possession of one Drake for repair, by virtue of a justice's attachment in favor of the defendant. The constable made a minute of the levy, and left the wagon with Drake and asked him to take care of it for him. Ten or twelve days after, the constable saw the plaintiff, and informed him by direction of the defendant, that he had no claims upon the wagon. These proceedings were held not to amount to a conversion, on the ground, that the actual possession was not changed, and that the plaintiff was put to no charge in respect to it.

The case of *Connah* v. *Hale*, 23 Wend. 462, was an action of trover for rotary pumps taken by a constable under a distress warrant for rent due from one Lovell. The pumps were enclosed in boxes, one of which was opened at the time of the distress. They were left in the store occu-

pied by Lovell, who removed and left them in it, and was succeeded by one Bayer, who was directed by Connah to keep them, and he did till Connah took them away. The opinion states, that " the property was distinctly levied on, and an inventory taken and appraisal had, one of the boxes was opened; all this followed by the defendant's direction, that he meant to sell them, the plaintiff in the meantime submitting to such control." These acts were held to amount to a conversion.

The case of *Rand* v. *Sargent*, 23 Maine, 326, was trover for a pair of oxen. The defendant stated, that he must and did attach them; and one Nickerson receipted to him for them as attached. He did not in any other manner interfere with them. This was decided not to amount to a conversion, on the ground that the plaintiff's possession had not been interrupted. That it was the debtor's possession, if any one's, which had been disturbed; and the plaintiff not having procured the receiptor and not being responsible to him, had not been injured.

In this case the testimony shows, that a deputy of the defendant went on to the logs, which were then frozen into the ice, and counted them, and stated, that he attached them as the property of one Doughty, who cut them in connection with Jackson, under a permit from the mortgager of the land. He did not remove any of them. He took a receipt for them as attached, signed by Jackson and by the plaintiffs in that suit. It does not appear, that he left any person in charge of them. The logs thus remained for about ten days, when the attachment was discharged by an arrangement made between the plaintiffs in that suit and Doughty and Jackson; and the officer gave notice thereof to Jackson; it does not appear to have been given to Doughty. The officer had filed a copy of his return of an attachment of them with the town clerk of Monson.

The actual possession of the logs was not changed. Nor was there any threat to remove them, or to employ a person to guard them to procure a receiptor. There is no proof

of an exercise of dominion over them in exclusion or defiance of the plaintiff's rights, unless the passing on to them and counting them can be so considered. If this were so regarded, every person who should pass on to a lot of logs not owned or claimed by him, and count them, might be considered as liable for their conversion. The handling and sealing of trunks was not so regarded in *Mallalien* v. *Laugher*. These acts of the officer might render him liable as a trespasser. Trespasses upon personal property may often be committed without any claim to be the owner or possessor of it, and without the exercise of any dominion over it. The return of the officer of an attachment of them without any other act than the lodgment of a copy of it with the town clerk, would not amount to a conversion of them according to the cases of *Mallalien* v. *Laughee*, *Bailey* v. *Adams*, and *Rand* v. *Sargent*.

According to the cases of *Small* v. *Hutchins*, 19 Maine, 255, and *Eastman* v. *Avery*, 23 Maine, 248, a receiptor is to be regarded as the servant of the officer; and while he holds the property for the officer replevin may be maintained.

But the reception of an accountable receipt for them would not amount to a conversion, as decided in the case of *Rand* v. *Sargent;* and even if the receiptor had been placed in charge of them without the exercise of any control over them, there would have been no conversion according to the case of *Bailey* v. *Adams*.

The receiptors being the servants of the officer, their acts as such may be regarded as his acts. But they do not appear to have in any manner interfered with them as such, or in fact in any other capacity until after the attachment was discharged. The constructive possession of the plaintiffs as owners, does not appear to have been interrupted; and as soon as the officer passed from the logs, they might, for aught that appears, have exercised the same ownership, possession and control over them as before, without being molested by the officer or receiptors.

There are many cases, in which a valid attachment of

Fernald v. Chase.

property may be made, and yet such attachment may not show, that the possession or dominion of the owner has been disturbed. *Boynton* v. *Willard*, 10 Pick. 166. The making .of a valid attachment does not therefore prove, that there has been a conversion of the property by the attaching officer, when the property appears to have been owned not by the debtor, but by another person.

The facts enumerated in the instructions do not, necessarily, and so certainly prove, that there has been a conversion of the property attached, that it can as matter of law be declared, that there has been a conversion of the property.

An officer may make on a writ a return of an attachment of personal property, without coming in contact with it, and in a suit against him by· the creditor, he will be estopped by it to deny that he made a valid attachment. · If he should take a receipt of some person, to be accountable to him for such property, without any interference with it by him or the receiptor, it is quite apparent, that he would not have so conducted, as to be liable for its value to the owner by a conversion of it. If the law should make such an attachment valid, with respect to the owner and third parties, upon ʼa notice thereof, filed by the officer with the town clerk of the town in which the property was found, it would not be the less certain, that the officer had not intermeddled with the property by coming into contact with it, or by any act of dominion over it.

If the stepping upon the logs, counting them, and passing from them, be not a conversion of them, it is difficult to perceive how all the other acts of the officer combined with them, being insufficient of themselves for such purpose, could constitute a conversion.

In this case, there does not appear to have been any valid attachment, with respect to the owners or third persons, by the aid of the statute and filing of a notice with the clerk of the town of Monson, for the property was not in that town. *Verdict set aside and new trial granted.*

TENNEY and WELLS, J. J., concurred..