## M. H. PRESLEY, ADMR.
### *v.*
## FRANK POWERS.

1. PRACTICE IN SUPREME COURT—*when error in excluding evidence is obviated.* If it is error to exclude the records of the probate court, showing the amount of claims allowed against an estate, it will be obviated by the testimony of a witness showing the indebtedness of the estate.

2. IMPEACHMENT OF WITNESS—*declarations out of court.* In trover, by the administrator of an estate, where the husband of the intestate is called as a witness to prove title to the goods in her, if the proper foundation is laid, the defendant may prove the declarations of the husband inconsistent with his testimony in the case.

3. TROVER—*when it will lie.* To maintain trover, the plaintiff must prove that the goods in question were his property, and that while they were so, they came into the defendant's possession, who converted them to his own use.

4. Where a wife dies indebted for goods purchased by her to be sold at retail, and after her death, while her husband is continuing the business, an agent of a principal creditor calls for pay, and the husband offers to sell the goods to him in payment, which he declines to buy, but finds a purchaser, to whom the husband sells, and the husband gives one of the purchaser's notes to the agent, on the debt, the agent, not assuming any control over the goods, will not be liable in trover to the administrator of the wife for a conversion of the goods.

WRIT OF ERROR to the Circuit Court of Clay county; the Hon. JAMES C. ALLEN, Judge, presiding.

Mr. RUFUS COPE, for the plaintiff in error.

Messrs. WILSON & HUTCHINSON, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of trover, brought by M. H. Presley, administrator of the estate of Maria L. Marshall, deceased, in the circuit court of Clay county, against Frank Powers, to recover the value of a certain stock of goods, alleged to have been converted by the defendant to his own use, which, as it is claimed, belonged to the estate of the deceased.

A trial of the cause before a jury resulted in a verdict and judgment in favor of the defendant. The plaintiff appealed, and insists upon a reversal of the judgment, on the ground that the court erred in the rejection and admission of certain evidence, and in giving instructions for the defendant.

The offered evidence which the court excluded, was, the records of the probate court, showing the amount of indebtedness which had been probated against the estate of the deceased.

We perceive no objection to the evidence, and it should have been admitted. But the first witness on the stand testified that Maria L. Marshall, at the time of her death, owed from $7000 to $8000. This proof obviated the necessity of introducing the probate records, and, even if it was error to exclude the offered proof, the same facts having been established by other evidence, the plaintiff was in no manner injured.

The court allowed the defendant to prove the declarations of L. G. Marshall, the husband of the deceased, to the effect that he " was running the store in his wife's name, because of some old debts in Ohio."

These declarations were offered for the purpose of impeaching the evidence of L. G. Marshall, a witness for the plaintiff, by showing that he had made statements out of court inconsistent with his evidence given on the stand. If the proper foundation was laid, which does not seem to be controverted, the declarations were proper for the purpose for which they were offered.

In regard to the defendant's instructions, we are free to concede that the third in the series had no application to the

question involved, and besides, it did not contain correct propositions of law, and should have been refused.

The correctness of the ninth instruction might well be questioned. But even if these instructions had been refused, and the offered evidence admitted, which the court excluded, the result of the case could not have been otherwise than a verdict in favor of the defendant.

It appears, from the record, that Maria L. Marshall owned a stock of goods in her own right. L. G. Marshall, her husband, carried on the business for her, and in her name. On the 19th day of October, 1873, she died. At the time, the goods on hand were worth $3000. After the death of the wife, the husband continued the business for over three months. During this time a bill of goods was bought and sales by retail were made, in the same manner as before the wife died.

Shipley, Pumphry & Co. had for several years been selling goods to M. L. Marshall, and, at the time of her death, she was indebted to them in the sum of $964.84.

In the month of February, 1874, the defendant, who was the traveling salesman of Shipley, Pumphry & Co., called on Marshall for the purpose of collecting the amount due the firm. Marshall, not having the money to pay, proposed to sell out the goods to the defendant, but the firm notified him not to buy the goods, either for them or himself.

Subsequently, Powers met Chas. B. Ferryman, and informed him that the store was for sale, and, after some negotiation, the goods were purchased by him. An invoice was taken, and a written contract of sale made out and executed. Ferryman bought the store on credit, and gave his notes in payment, which were signed by the defendant as surety.

These notes, with the exception of $200, which Marshall received, were delivered over by Marshall to Powers, in payment of the indebtedness held by Shipley, Pumphry & Co. against the Marshalls, and the balance after the payment of the firm was to go to other creditors.

These are the leading facts in the case, proven before the jury,

and had a verdict been rendered againt the defendant on the facts proven, it could not have been sustained.

It does not appear that the defendant purchased the goods, neither did he acquire the possession or convert them to his own use.

The defendant, as an agent for the firm of Shipley, Pumphry & Co., called upon Marshall, to collect a debt due his principals. Marshall requested him to find a man who would buy the goods. This he succeeded in doing, and after the sale and delivery of the goods to Ferryman, the purchaser, Marshall delivered the notes obtained for the goods to the defendant, in payment for indebtedness due Shipley, Pumphry & Co. and other creditors.

The goods passed from the possession of Marshall into the hands of Ferryman. The defendant had no control or possession of the property; he assumed no dominion over it.

In Bacon's Abridgment, vol. 9, p. 640, it is said: "In order to maintain an action of trover, the plaintiff must prove that the goods in question were his property, and that, while they were so, they came into the defendant's possession, who converted them to his own use."

Here, as we understand the evidence, the defendant never had the possession of the property, nor did he, by act or deed, convert the same to his own use, or assume control or dominion over it.

What the liability of Marshall or Ferryman might be, had the action been brought against them, it is not necessary to determine, as they are not before the court; but we perceive no ground upon which the action can be sustained against the defendant.

Under such circumstances, while the court may have erred in the admission or exclusion of the evidence heretofore alluded to, or in the instructions to the jury, yet, as the verdict could not have been other than in the defendant's favor, we can not reverse.

The judgment will be affirmed.

*Judgment affirmed.*