CONTINENTAL GIN CO. v. DE BORD.

No. 1498.    Opinion Filed April 9, 1912.

Rehearing Denied June 4, 1912.

(123 Pac. 159.)

1. JUDGMENT—Setting Aside—"Direct Attack." A "direct attack" on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law.

2. SAME—"Collateral Attack." A "collateral attack" on a judicial proceeding is an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.

3. CHATTEL MORTGAGES—Foreclosure—Sale—Collateral Attack. Under the law in force in the Indian Territory prior to statehood, a foreclosure sale made pursuant to an order of court is not completed until confirmed by the court; and until such confirmation such a sale may be attacked in a collateral proceeding.

4. JUDGMENT—Trial by Court—Findings—Collateral Attack. When, in a judicial proceeding, the court expressly finds that the defendant is present, such finding is not subject to attack in a collateral proceeding.

5. APPEAL AND ERROR—Review—Prejudicial Effect of Error. It is reversible error to admit incompetent evidence, the prob-

able effect of which is to arouse the sympathy of the jury in favor of the winning party, or to prejudice the jury against the losing party.

6. **CHATTEL MORTGAGES** — Rights of Parties — Wrongful Conversion. A mortgagee of personal property, who takes possession under an invalid sale, is a mortgagee in possession; and, if he disposes of the property without complying with the requirements of law or. the terms of the mortgage, he is guilty of a conversion.

7. **TROVER AND CONVERSION**—Elements of Conversion—Possession of Property. While it is generally true that one, in order to be guilty of a conversion of personal property, must be in possession of it, yet, if he exercises acts of dominion over the property and participates in the wrongful act of him who is in actual possession by aiding and abetting in the wrongful disposition and sharing in the proceeds thereof, he would then be guilty of a conversion.

8. **SAME**—Right of Action—Conditions Precedent—Demand. Demand is not a necessary condition precedent to maintaining an action of wrongful conversion after the conversion has been completed, and the property has passed out of the possession · of the defendant.

9. **CHATTEL MORTGAGES** — Damages — Measure. A mortgagor's measure of damages for wrongful conversion by the mortgagee is the difference between the market value of the property at the time of the conversion and the debts then existing, which were liens upon and satisfied by a sale of the property.

(Syllabus by Ames, C.)

*Error from District Court, Garvin County;*
*R. McMillan, Judge.*

Action by J. D. De Bord against the Continental Gin Company, a corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*W. F. Bowman, Yerker E. Taylor,* and *Stuart & Bell,* for plaintiff in error.

*C. H. Thomason* and *Blanton & Andrews,* for defendant in error.

Opinion by AMES, C. This action was brought by J. D. De Bord, as plaintiff below, against the Continental Gin Company, as defendant below, to recover damages for the wrongful conversion of certain buildings and machinery comprising a cotton gin, located in the town of Johnson. The action arose in the

Indian Territory, and was transferred to the district court after statehood. The plaintiff, as security for indebtedness to the Laidlaw Lumber Company, had executed a mortgage, conveying portions of this gin plant. To secure an indebtedness to the defendant, he executed another mortgage, conveying portions of the plant. He was also indebted to other creditors. In 1904 the Laidlaw Lumber Company foreclosed its mortgage by a proceeding in the United States Court for the Southern District of the Indian Territory. At the foreclosure sale, the property was bid in by Yerker E. Taylor, as attorney for and agent of the Laidlaw Lumber Company. The defendant appeared at the sale and protested against its consummation; but its protest was disregarded by the Laidlaw Lumber Company and the United States marshal, and its agent then left. After the marshal's sale, the property was delivered to Taylor, and he employed a caretaker and put him in charge of it. A few days after the sale, one Charles Dury, the agent of the defendant, hearing of an opportunity to sell the gin, opened negotiations with Taylor, who advised him that his only interest in the property was to collect the debt of the Laidlaw Lumber Company, and that if he could find a purchaser at a higher price he might apply the excess to the payment of De Bord's other creditors. Dury found a purchaser, who bought the property, taking a bill of sale therefor from Taylor, and executing notes and a mortgage covering the Laidlaw Lumber Company's indebtedness, and notes and a second mortgage to the defendant for the balance of the purchase price. The property was delivered to this purchaser in January, 1905, and in January, 1906, the plaintiff brought this suit for conversion against the defendant alone, without joining the Laidlaw Lumber Company, alleging that the defendant was a foreign corporation, and that it had taken this property from the possession of the plaintiff and converted it to its own use. The defendant denied the conversion, and at the trial the plaintiff recovered judgment for more than $2,000, after the defendant had been given credit for the plaintiff's debts.

The theory upon which the plaintiff recovered was that the foreclosure sale was invalid for want of service on the plaintiff

(the defendant in that case), because it was not confirmed by the court, and because there was no appraisement; that therefore Taylor, in taking possession of the property for the Laidlaw Lumber Company, was a mortgagee in possession; that the defendant in this case co-operated with the Laidlaw Lumber Company in selling the property, without conducting the sale in pursuance of the terms of the mortgage; and that this amounted to a conversion, giving the plaintiff the right to recover the value of the property after deducting the indebtedness.

The first question which presents itself to our minds is whether or not the foreclosure sale can be attacked in this proceeding. This is not a proceeding to review that judgment in any manner provided by law, but is a suit against the defendant, who was not a party to that proceeding, alleging a conversion of the property which was sold at that time. As tending to show that he had not converted the property, the defendant offered in evidence the United States marshal's sale to Taylor and the judgment of the court in that case directing the foreclosure. That the plaintiff's attack on that judgment is not a direct, but a collateral attack, is not open to doubt. Van Fleet's Collateral Attack, secs. 2 and 3; *Spade v. Morton*, 28 Okla. 384, 114 Pac. 724; *Eaves v. Mullen*, 25 Okla. 679, 107 Pac. 433; *Steele v. Kelley*, 32 Okla. 547, 122 Pac. 934. In paragraph 2 of Van Fleet's Collateral Attack, it is said:

"A direct attack on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law. Illustrations.—A motion for a new trial or for a *venire de novo;* a motion in the cause to vacate, modify, or correct the judgment according to the statute or the practice of the court; appeals; writs of error, *certiorari, audita querela,* and prohibition; petitions for rehearing and bills of review; bills in equity or complaints and petitions under the Codes to set aside, vacate, modify, or correct judgments for fraud, accident, mistake, or excusable neglect, are some of the modes provided by the law for avoiding or correcting judgments, and are direct attacks with which this work has nothing to do."

Paragraph 3 is in part as follows:

"A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in

some manner not provided by law. As there are only two ways to attack a judicial proceeding, direct and collateral, it is obvious that this definition complements the one in the last section, and they are both self-evident. Any proceeding provided by law for the purpose of avoiding or correcting a judgment, is a direct attack which will be successful upon showing the error; while an attempt to do the same thing in any other proceeding is a collateral attack, which will be successful only upon showing a want of power. Illustrations.—When a judicial order, judgment or proceeding is offered in evidence in another proceeding, an objection thereto on account of judicial errors is a collateral attack. Familiar instances are where a person relies on a judgment as a justification for a trespass, assault, or imprisonment; or to show his right or title in *habeas corpus*, replevin, trover, ejectment, trespass to try title, or suit to quiet title. That the objection to the judgment for judicial errors in such cases is a collateral attack, the cases all agree. Hence citations are useless. Less familiar instances are where the purchaser at execution or judicial sale refuses to complete or seeks to avoid the same on account of judicial errors; or where a garnishee or trustee refuses to comply with or seeks to avoid the order made against him because of judicial error in the main proceeding; or where the right of an executor, administrator, guardian, tutor, assignee, receiver, commissioner, trustee, or other person acting under judicial order, to sue or defend, is denied because of judicial error in the proceeding in which he was appointed, or in the order authorizing him thus to sue or defend. In all such cases the attack is collateral."

This being a collateral attack, we next inquire whether the objections to the judgment are such as can be raised in this proceeding. One of the objections is that the sale was never reported to and confirmed by the court. Is this an objection that may be raised in a collateral proceeding? As this case was pending prior to statehood, and as the question involved is the effect of a sale made under the Arkansas statutes in force in the Indian Territory, for the purpose of this decision, we accept the rule which was in force under the Indian Territory statutes, without meaning to establish a precedent to be binding in cases originating in Oklahoma. The rule in the Indian Territory is announced in *Wells v. Rice*, 34 Ark. 346, where it is said in the syllabus:

"Until confirmed by the court, a sale made under its decree is not completed; and a deed from the commissioner to the purchaser confers upon him no right to the property, and may be assailed in a collateral proceeding."

In the opinion, at page 352, the court say:

"The deed from Martin, as commissioner, to Louis Hanauer, contained no recital of a confirmation of the sale by the court, or of a report of it, having been made by him to it. It is contended by the appellants that the sale by the commissioner could not be attacked collaterally, or in an action other than that in which it was ordered, or it be shown that the debt was paid before the sale was made. This position would undoubtedly be correct, had there been a confirmation of the sale, and it had so become completed and absolute. But, until confirmed by the court, a sale made under its decree is not completed, and a deed to the purchaser confers upon him no right to the property."

We therefore conclude that it was not erroneous for the court to permit this sale to be attacked on this ground.

The court likewise permitted evidence to be offered attacking the jurisdiction of the court over the person of the defendant in the foreclosure proceedings. In the decree of foreclosure, it is recited that the defendant appeared in person and by his attorney. The court admitted evidence tending to show that the defendant was not present; that at some time before the trial he sustained an injury which resulted in weakening of the brain; and that at the time the judgment was rendered he was *non compos mentis*. We think this was error, as the express finding of the court that the defendant was present at the time the judgment was rendered, both in person and by attorney, cannot be attacked in a collateral proceeding any more than any other express finding. The law provides methods of direct attack which furnish ample protection in such cases. In the trial of any lawsuit, it is necessary for the court to acquire jurisdiction over the person of the defendant; and when the court has solemnly passed upon this question of jurisdiction, and expressly found that the defendant was present, that finding is as conclusive in a collateral proceeding as the judgment of the court on any other question at issue in that case. Van Fleet on Collateral Attack, par. 468, citing *Eitel v. Foote,* 39 Cal. 439; *Harnish v. Bramer,* 71 Cal.

155, 11 Pac. 888; *dictum* in *Bridgeport Savings Bank v. Eldredge,* 28 Conn. 556, 562, 73 Am. Dec. 688; *Osgood v. Blackmore,* 59 Ill. 261, 265; *Rumfelt v. O'Brien,* 57 Mo. 569, 572; *Lingo v. Burford* (Mo.) 18 S. W. 1081; *Harris v. McClanahan,* 79 Tenn. 181, 185; *Letney v. Marshall,* 79 Tex. 513, 15 S. W. 586; *Marrow v. Brinkley,* 85 Va. 55, 6 S. E. 605, 608; *Doe ex dem. Sargeant v. State Bank,* 4 McLean, 339, 346, Fed. Cas. No. 12,360; *Colt v. Colt* (C. C.) 48 Fed. 385.

As this judgment was subject to collateral attack on another ground, it may appear unnecessary to decide that it was not subject to collateral attack on the ground now under consideration; but the evidence offered in support of this ground was of such a nature as to arouse the sympathy of the jury for the plaintiff, and probably to enhance the damages which he might recover, and, from the apparent emphasis which was laid upon it at the trial, we believe it was prejudicial error to admit it. In the syllabus in *Bash v. Howald,* 27 Okla. 462, 112 Pac. 1125, it is said:

"Hearsay evidence having been admitted on the trial, which was liable to inflame the minds of the jury and prejudice them against the losing party, will cause reversal on review in this court."

The next question for consideration is whether the defendant was guilty of a conversion. The foreclosure sale in the suit of the Laidlaw Lumber Company against De Bord not having been confirmed, the property having been sold without appraisement, and having been bid in at the sale by Taylor, as agent of and attorney for the Laidlaw Lumber Company, was not sufficient to divest the rights of De Bord, and under the authorities the Laidlaw Lumber Company, after that sale, was a mortgagee in possession. *Hoover v. Brookshire,* 32 Okla. 298, 122 Pac. 171; *Harrill v. Weer,* 26 Okla. 313, 109 Pac. 539. The Laidlaw Lumber Company, therefore, being a mortgagee in possession, would be required to foreclose its mortgage pursuant to law, could not sell at private sale, where the mortgage did not so provide, and a sale by it in violation of the terms of the mortgage would be a conversion of the property. *Hoover v. Brookshire, supra; Harrill v. Weer, supra.* The difficult question in this case is whether or not this defendant participated in that sale to such

an extent as to make it a joint tort-feasor with the Laidlaw Lumber Company. As previously stated, the defendant, through its agent, protested against the foreclosure sale; and it is clear that if it is guilty of a conversion it is because of its participation in the subsequent sale by Taylor to Downs Bros. After Taylor had bid in the property, Dury, representing the defendant, found a buyer for it, represented to Taylor that the defendant had an interest in this property which it did not desire to lose, and Taylor stated to him that his only interest in it was to collect the debt of the Laidlaw Lumber Company, and that if he (Dury) could find a purchaser he might have the proceeds in excess of this debt. Dury found a purchaser, and at the sale took all of the purchase price, except the Laidlaw Lumber Company's debt. It does not appear what the purchase price was. The bill of sale to Downs Bros. was executed by Taylor, and possession was delivered pursuant thereto. The defendant insists that, as it was never in possession of the property, it was not guilty of a conversion, and cites *Aylesbury Mercantile Co. v. Fitch,* 22 Okla. 475, 99 Pac. 1089, 23 L. R. A. (N. S.) 573, and *Purcell Cotton Seed Oil Mills v. Bell,* 7 Ind. T. 717, 104 S. W. 944, in support of this contention. This, it is true, is the general rule. 38 Cyc. 2018.

In *Plano Mfg. Co. v. Jones,* 8 N. D. 315, 79 N. W. 338, it is held that a defendant, who had storage tickets for wheat, placed in an elevator by the plaintiff, was not guilty of a conversion of the wheat, because he had refused to deliver the tickets, for the reason that he did not have the actual possession of the wheat, and the tickets did not call for that particular wheat; and that therefore he did not have the actual or constructive possession of the wheat.

In *Heighes v. Dollarville Lumber Co.,* 113 Mich. 518, 71 N. W. 870, the syllabus is as follows:

"A lessee of land who is in full possession thereof, and of a house built thereon by him, under an agreement that it should remain his personal property, cannot maintain an action against the lessor for the conversion of the house because of the sale of the lots to a third party without reservation, although the purchaser requires of him an additional rent."

In *Traylor v. Horrall*, 4 Blackf. (Ind.) 317, it is said in the syllabus:

"The gist of such action is the conversion; and, unless the defendant has had an actual or virtual possession of the goods, he cannot be charged with a conversion of them to his own use."

In *Polley v. Lenox Iron Works*, 2 Allen (Mass.) 182, the syllabus is as follows:

"One who, knowing that property is under an attachment, suffers it to be sent away and sold by the owner, and receives the avails arising from the sale, in pursuance of a previous arrangement to that effect, is not thereby guilty of a conversion."

And in the opinion, at page 184, it is said:

"A conversion of property, by detaining it from the owner, is by wrongfully withholding from him by a party who has possession thereof, actual or constructive, and who ought, and has the power, to put it into the owner's possession, or within his control."

In *Boobier v. Boobier*, 39 Me. 406, it is said in the syllabus:

"A person who has no possession, actual or constructive, of property demanded of him by the owner, nor has previously wrongfully possessed or withheld it, cannot be made liable, in an action of trover, for refusal to deliver it, although he may have withstood the efforts of the owner to obtain possession, or prevented him by force."

In *Fernald v. Chase*, 37 Me. 289, it is said in the syllabus:

"There can be no conversion of property by a defendant, without an actual possession of it, or the exercise of such a claim of right or of dominion over it, as assumes a right to hold the possession, or to deprive the other party of it. To make out a conversion, there must be proof of a wrongful possession, or of the exercise of a dominion, in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand."

In *Presley v. Powers*, 82 Ill. 125, the third paragraph of the syllabus is as follows:

"To maintain trover, the plaintiff must prove that the goods in question were his property; and that while they were so they came into the defendant's possession, who converted them to his own use."

While this is the general rule, it is not necessary in every case that the defendant should have the actual physical posses-

sion of the property, in order to be guilty of a conversion.

In *Aylesbury Mercantile Co. v. Fitch,* 22 Okla. 475, 99 Pac. 1089, 23 L. R. A. (N. S.) 573, it is said in the syllabus:

"Conversion is any distinct act of dominion, wrongfully exerted, over another's personal property in denial of or inconsistent with his rights therein."

*Smith v. Hurley,* 29 R. I. 489, 72 Atl. 705, was a case in which the plaintiff had purchased several lots of lumber at a public auction, at which the defendant was auctioneer. A dispute arose as to the plaintiff's right to take one of the lots so purchased; and the auctioneer forbade the plaintiff from taking any of the lots without paying for all, and directed the person in possession not to deliver the lumber to the plaintiff. It was held that the auctioneer was guilty of a conversion.

In *Davidson v. Kolb,* 95 Mich. 469, 55 N. W. 373, it is said in the syllabus:

"Actual possession by the defendant of timber alleged to have been converted is not necessary to create a liability therefor, which arises if he in any way abetted or connived in the unlawful taking."

In *Johnson v. Powers,* 40 Vt. 611, the plaintiff sued the defendant for the conversion of his watch, which he had lost, and which he had charged the defendant with finding and converting to his own use. The court held that if the watch was disposed of by some one else, upon a previous understanding with the defendant that he was to share in the proceeds, the defendant would be guilty of a conversion.

It is apparent from this review of the authorities that actual possession by the defendant is not an indispensable requirement in an action of conversion, and that a defendant may be guilty without being in actual possession, if he exercises dominion over the property and participates in the wrongful act of one who is in actual possession, to the extent of aiding or abetting the consummation of the wrong. Conversion, however, involves wrongdoing, and is usually a tort. The tortious element is, perhaps, less visible in a case where a mortgagee in possession sells without observing the terms of his mortgage; but in such case he is guilty of the conversion, because it is a breach of his obligation

to sell in that manner; and one who aids and abets in the sale with knowledge of the facts, and who shares the proceeds is, of course, just as guilty as the mortgagee himself. In the case at bar, if the defendant, through its agent, knew that Taylor was a mortgagee in possession, then, of course, it was bound to know that he had no right to sell the property, except pursuant to the terms of the mortgage; and if, with this knowledge, it aided and abetted in the sale and received a part of the proceeds, it would be equally guilty of the conversion. If, on the other hand, it had no knowledge that Taylor was in possession as mortgagee, but thought in good faith that the foreclosure sale was valid, and that Taylor had a right to sell, and was entirely unconscious of the fact that it was aiding or abetting in the conversion of the property, then it would not be guilty of any breach of duty which it owed to the plaintiff, and therefore committed no tort. Foundations of Legal Liability (Street) pp. 234, 235.

The instructions of the court were not in harmony with this view of the law; but it is unnecessary to examine them *seriatim*, as these views will, of course, be followed on another trial of this case. As the case must be tried again, it is necessary to briefly consider two propositions which may again arise. It is insisted by the defendant that before the plaintiff could maintain this action he should have made demand on Downs Bros. for possession of the property; but if the defendant was guilty of conversion, the property having passed out of his control, a demand would have been fruitless and unnecessary. *Purcell Cotton Seed Oil Mills v. Bell,* 7 Ind. T. 717, 104 S. W. 944; *Phelps, Dodge & Palmer Company v. Halsell,* 11 Okla. 1, 65 Pac. 340.

If the conversion is established under the principles herein laid down, the plaintiff's measure of damages will be the difference between the market value of the property at the time of the conversion and the debts then existing, which were liens upon, and satisfied by the sale of, the property. *Hoover v. Brookshire, supra; Harrill v. Weer, supra.* And the testimony should be confined to the market value at that time; and witnesses who were not familiar with the condition and market value of the

property at that time should not be permitted to testify as to its market value.

The case should be reversed and remanded for a new trial. By the Court: It is so ordered.