## PETTIS v. JOHNSTON.

No. 9546—Opinion Filed June 1. 1920

(Syllabus by the Court.)

**1. Pleading—Construction—Exhibits.**

The allegations of a pleading challenged by general demurrer must be construed in connection with the exhibits attached thereto. (See par. 11, Op.)

**2. Judgment—Recital as to Process—Conclusiveness—Record.**

The recital of service of process in a judgment is not conclusive where it is positively contradicted by and in irreconcilable conflict with the judgment roll, but resort to the record to impeach such recital of service in the judgment means an inspection of the entire record—the judgment roll. (See par. 11, Op.)

**3. Same—Collateral Attack—Presumption of Process.**

In support of a judgment collaterally attacked, every intendment will be indulged to uphold and support it; if the judgment thus assailed contains no recital of service of process and the record is barren of evidence of the issuance and service of process, then the service of process will be presumed; and this presumption of service stands until overcome by evidence to the contrary. (See par. 11, Op.)

**4. Same—Kind of Process Shown by Record.**

If it appear positively from the judgment roll that process was served in a particular mode, no other and different service will be presumed; that is to say, where the record itself explicitly and positively shows a particular kind of service and is in irreconcilable conflict with any reasonable presumption of other service. then the character of service disclosed by the record is the one upon which the jurisdiction of the court must depend. (See par. 11, Op.)

**5. Same—Lack of Process—Extrinsic Evidence—Vacating and Modifying Judgment.**

. Relief based on extrinsic evidence may be had against a judgment rendered without service of process, under the third subdivision of section 5267, Rev. Laws 1910, empowering the court to vacate or modify its own judgments or orders at or after the term at which

such judgment or order was made, on account of "irregularity in obtaining a judgment or order." (See par. 2, Op.)

### 6. Same—Time for Motion to Vacate.

If it be necessary to resort to extrinsic evidence to show the invalidity of a judgment for want of service of process, the motion to vacate must be presented within three years following the rendition of the judgment or order, as provided for in section 5274, Rev. Laws 1910. (See par. 2, Op.)

### 7. Same—Exclusiveness of Remedy—Equity.

The remedy provided by the third subdivision of section 5267, Rev. Laws 1910, for vacating a judgment rendered without personal or constructive service of process, is exclusive of relief in equity during the three years following the rendition of the judgment, unless there be special reasons in the particular case why the statutory remedy is inadequate. (See par. 2, Op.)

### 8. Same—Service of Process—Extrinsic Evidence.

Extrinsic evidence—evidence dehors the judgment roll—is admissible to contradict the officer's return of service and the recital of service in the judgment. (See par. 2, Op.)

### 9. Same—Motion to Vacate—Requisites—Meritorious Defense.

It is unnecessary for the motion to vacate, based on extrinsic evidence of no service of process, to show a meritorious defense to plaintiff's suit. (See par. 2, Op.)

### 10. Same—Void Judgment—Attack—Limitations.

A judgment which is void upon its face and requires only an inspection of the judgment roll to demonstrate its want of validity is a "dead limb upon the judicial tree which may be lopped off at any time"; it can bear no fruit to the plaintiff, but is a constant menace to the defendant, and may be vacated by the court rendering it "at any time on motion of a party or any person affected thereby," either before or after the expiration of three years from the rendition of such void judgment. Such motion is unhampered by a limitation of time. (See par. 3, Op.)

### 11. Same—"Void Judgment"—Judgment Roll—Record.

A judgment is void on its face when its invalidity is affirmatively disclosed by an inspection of the judgment roll but it is not void in the legal sense for the want of jurisdiction unless its invalidty appears on the face of the record; Edwards v. Smith, 42 Okla. 544, followed. (See par. 3, Op.)

### 12. Same—Motion to Vacate—Requisites and Conditions.

It is not necessary to show a meritorious defense in support of a motion to vacate a judgment void on its face; nor can the court impose any conditions for vacating it. (See par 3. Op.)

### 13. Same—Method of Attack—Bill in Equity.

When it clearly appears that a party, not served with process, against whom a default judgment, valid on its face, has been taken, had no notice or knowledge of such judgment until after three years from its rendition, or in too short a time before the three years expired to file a motion to vacate, such party may file a bill in equity against the plaintiff to evade, nullify, or restrain the enforcement of such judgment. (See par. 4, Op.)

### 14. Same—Attack in Equity—Showing of Meritorious Defense.

An attack in equity based upon evidence dehors the record to show the invalidity of a judgment for want of jurisdiction over the party complaining, must be accompanied by a showing that such plaintiff in equity has a meritorious defense to the action upon which the judgment complained of was rendered: and this is true whether the suit is commenced in equity before or after the expiration of three years from the rendition of such judgment. (See par. 5, Op.)

### 15. Same—Conditions of Relief—Power of Court.

A court of equity may impose such conditions to the granting of relief against a judgment not void on its face, as appear equitable under the circumstances of each particular case, and also as provided for by section 5272, Rev. Laws 1910. (See par. 5, Op.)

### 16. Same—Sufficiency of Evidence—Process.

Sound public policy, the stability of solemn judgments of courts, and the security of litigants demand that neither the officer's sworn return nor the recital of service in the judgment based thereon shall be set aside or contradicted except upon the most clear, cogent, and convincing evidence. (See par. 7, Op.)

### 17. Same—Rights of Bona Fide Purchasers.

The rights of bona fide purchasers of property sold under the authority of a judgment not void on its face, will not be affected or prejudiced by either the vacation of such judgment by the court rendering it, or a decree in equity, annulling, evading, or restraining its further enforcement, although extrinsic evidence would show that the court had no jurisdiction for want of service of process on defendant therein. (See par. 6, Op.)

### 18. Same—"Bona Fide Purchaser"—Judgment Plaintiff.

A plaintiff, though without knowledge of the falsity of the officer's return of service of process, is not a bona fide purchaser of property sold under the authority of a judgment for him, based upon a false return. (See par. 6, Op.)

### 19. Same—Vacation of Judgment for Lack of Process—Extent of Right.

This court declines to follow or adhere to those decisions holding that a judgment, valid on its face, rendered without service of pro-

cess or appearance of defendant, may be vacated at any time on motion. (See par. 2, Op.)

## 20. Homestead—Nature of Interest—Mortgage Foreclosure—Necessary Parties.

The homestead interest is jointly vested in the husband and wife for the benefit of themselves and family, without regard to which spouse owns the title to the land; the homestead interest is a creature of the Constitution and statutes, nothing like it being known at common law; it is a special and peculiar interest in real estate; it is not a mere inchoate interest in either spouse, to become vested upon the death of the other; this joint right is paramount to the individual rights of either, and being incapable of division and partition between husband and wife, it cleaves and adheres so closely to the title to the land itself that it cannot be dissociated therefrom by a mortgage foreclosure sale under a court decree to which either husband or wife is not a party. (See par. 9, Op.)

## 21. Same—Failure to Make Husband Party —Right of Wife to Attack Foreclosure Judgment.

The wife, the owner of the homestead in fee, may assail the validity of a decree and judgment foreclosing a homestead mortgage on the ground that the husband, though not the owner of the title to the land, was not made a party to the foreclosure proceedings. (See par. 9, Op.)

## 22. Same—Invalidity of Judgment and Sale.

If it be found upon an inspection of the judgment roll in a proceeding to foreclose a mortgage executed by husband and wife on the family homestead, that the husband was not a party to such foreclosure proceeding, the foreclosure judgment is void, although the wife is the owner of the fee title in the homestead and a party to the foreclosure suit. A sale under such foreclosure judgment is void and will not operate to divest the wife of the title to the land, nor in any way affect the homestead interest of either the husband or wife therein. (See par. 9, Op.)

## 23. Mortgages—Nature of Action to Foreclose.

An action to foreclose a real estate mortgage is a proceeding in rem. (See pars. 11 and 13, Op.)

## 24. Process—Service by Publication—Defects in Affidavit and Notice—Cure by Petition in Mortgage Foreclosure.

The petition filed against a nonresident mortgagor to foreclose a real estate mortgage is the initial link in the chain of proceedings necessary to obtain service of process by publication under section 4722, Rev. Laws 1910, and as such initial link may be resorted to for the purpose of supplying defects and omissions in the affidavit for publication and the publication notice. (See pars. 11 and 13, Op.)

## 25. Same—Failure to Describe Land in Affidavit—Collateral Attack.

In an action in rem (in this case a real estate mortgage foreclosure), under sections 4671 and 4722, Rev. Laws 1910, against a nonresident, the omission to describe the land in the affidavit for publication is not fatal on collateral attack; Ballew v. Young, 24 Okla. 182, City National Bank v. Sparks, 50 Okla. 648, and other attachment cases distinguished in the opinion. (See pars. 11 and 13, Op.)

## 26. Same—Sufficiency of Affidavit—Recitals as to Diligence to Obtain Personal Service.

An affidavit for service by publication, alleging that the defendant is a nonresident of the state and that plaintiff is unable to secure service of summons in Oklahoma, is sufficient without the additional allegation that plaintiff exercised diligence to obtain personal service. (See par. 12, Op.)

## 27. Same—Sufficiency of Publication Notice —Action in Rem.

The failure of the publication notice to describe the land involved in an action in rem or to state that the mortgage to be foreclosed is a real estate mortgage, or to state the amount of the note or debt secured by the mortgage, is not fatal to the judgment on collateral attack. (See par. 13, Op.)

## 28. Same.

In a proceeding in rem, the publication notice may state briefly and in general terms the nature of the judgment plaintiff seeks, and on collateral attack the publication notice, containing material elements required by the statute, will be treated as sufficient if that which is uncertain and omitted therefrom may be made certain by reference to the affidavit for publication or the plaintiff's original petition. (See par. 13, Op.)

## 29. Same—Sufficiency of Publication Service —Validity of Judgment.

The authority to hear and determine a case is jurisdiction to try and decide all the questions involved in the controversy, including the power to pass upon the sufficiency of the service of process; and in the exercise of its jurisdiction to foreclose mortgages, the district court must pass first upon the sufficiency of constructive service against a nonresident defendant, and if the district court in the exercise of this jurisdiction adjudges the affidavit for publication and the publication notice sufficient, the judgment rendered thereunder will not be held void in a collateral proceeding, if there be enough in the affidavit and publication notice to call for construction, and construction means the application of the law to the facts stated. (See par. 13, Op.)

## 30. Same.

The filing of the petition to foreclose a mortgage, the affidavit for publication, and the publication notice, put in motion the jurisdiction of the court, and the jurisdiction

thus invoked includes the power to pass upon the sufficiency of the steps taken by the plaintiff to invoke its jurisdiction. (See pars. 11 and 13, Op.)

### 31. Judgment—Process — Personal Judgment Against Nonresident.

A valid personal judgment cannot be rendered against a nonresident, based on service by publication. (See pars. 11 and 13, Op.)

### 32. Judgment—Collateral Attack—Effect of Success.

A successful collateral attack on a judgment does not operate to reverse, set aside, or vacate such judgment; the judgment is merely avoided or evaded. (See par. 10, Op.)

### 33. Judgment—Nature of Record.

A record preserved under the provisions of sections 5144 to 5146, inclusive, Rev. Laws 1910, directing the clerk upon order of the court to make a complete record of every cause as soon as it is finally determined, same to contain "the petition, the process, the return, the pleading subsequent thereto, reports, verdicts, orders, judgments and all material acts and proceedings of the court," is equivalent to the judgment roll at common law, which signified a roll of parchment upon which the proceedings and transactions of a court were entered by its officers, and which was then deposited in the court's treasury in perpetuam rei memoriam. (See par. 14, Op.)

### 34. Judicial Sales—Authority of Officer—Procedure and Terms.

An officer selling property under a court decree can sell such property on such terms, and such terms only, as are provided by the decree and the law in force governing such sale, which is incorporated into and made a part of the decree, and an officer has no authority to sell on credit, or to accept in payment of the bid anything other than lawful money, unless otherwise expressly authorized by the decree or the law in force governing such sale. (See par. 15, Op.)

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by E. B. Johnston against Becky Pettis for rents and foreclosure of landlord's lien on crops. Judgment for plaintiff, and defendant brings error. Reversed.

Johnston, plaintiff below, defendant in error, commenced this suit before a justice of the peace against Becky Pettis, plaintiff in error, to recover a money judgment for rent and to foreclose a landlord's lien on defendant's cotton crop. Among other things in defendant's answer to plaintiff's bill of particulars, she denies plaintiff's ownership of the land described and avers that she is the owner and in possession of the same; that the land was allotted to

her as a Chickasaw freedwoman, and that she is now and has been in continuous possession as such allottee, and that it was and is the family homestead; avers that in April, 1912, the Farmers Loan & Security Company commenced an action in the district court of Carter county against her and her husband, Isaac Leonard, to foreclose a mortgage executed by them on said land; that a foreclosure judgment was rendered finding defendant and Isaac Leonard were husband and wife, and under that foreclosure judgment the land was sold on May 3, 1913, to Cochran for $300, and the sale confirmed; that the sheriff executed a deed to Cochran, who then conveyed the land to plaintiff, Johnston. Defendant attaches to her answer as an exhibit thereto a transcript of all the proceedings in the mortgage foreclosure case, and alleges that no process was ever served on her, although she admits the record shows to the contrary; that her husband, Isaac Leonard, was not served with any summons, that the attempted service of summons on him by publication was void, and that her husband was not a party to said foreclosure action; further, that the purchaser at the foreclosure sale never paid the consideration, and got his deed by fraud. Under the authority of section 5357, Rev. Laws 1910, construed in Ewers v. Kilgore, 38 Okla. 196, this case was certified and transmitted to the district court, where the plaintiff filed a demurrer to the defendant's answer. The court sustained the demurrer to all that part of defendant's answer alleging that no process was served on her in the foreclosure case, that no process, actual or constructive, was served on her husband in the foreclosure case, and that the purchaser's deed was void because he failed to pay the consideration. Upon a trial of the case, judgment was rendered in favor of the plaintiff, and defendant on her appeal to this court assigns as error the action of the district court in sustaining plaintiff's demurrer to her answer.

Guy H. Stigler, for plaintiff in error.

J. T. Wheeler, for defendant in error.

RAMSEY, J. (after stating the case). The transcript of the record in the foreclosure proceedings attached to defendant's answer contains a summons, showing thereon the officer's return of personal service on defendant; also the foreclosure judgment contains a recital of service of summons on defendant.

1. The first question is: Can the recital in the foreclosure judgment of personal service of process on defendant be contradicted by extrinsic evidence—evidence dehors the record? 23 Cyc. 1086, says that the great majority of the decisions sustain the rule that the recitals of service of process in a domestic

judgment on which its jurisdiction is founded import absolute verity and cannot be contradicted or disproved in a collateral proceeding by any extrinsic evidence; citing a long list of state and federal cases. Black on Judgments (2nd Ed.) vol. 1, sec. 273, referring to domestic judgments says that "the great majority of the decisions hold that if the record shows the facts necessary to confer jurisdiction, or recites that jurisdiction did in fact attach, its averments are final and conclusive in every collateral proceeding and cannot be contradicted by any extraneous evidence." 23 Cyc. 1087, and Black on Judgments (2nd Ed.) vol 1, sec. 275, say that in other jurisdictions, Arkansas, Georgia, Minnesota, Mississippi, Nebraska, New York, Ohio, Wisconsin, Illinois, Tennessee, and Colorado, the record does not import uncontrollable verity when the want of jurisdiction is alleged, and that it is permissible to controvert the recitals of the record on this point by evidence aliunde; and always open to a party to contest the jurisdiction by producing other parts of the record which positively contradict the recitals of the judgment. One of the ablest decisions discussing the admissibility of extrinsic evidence to contradict recitals of service in a judgment is Ferguson v. Crawford, 70 N. Y. 253, 26 Am. Rep. 589; also the dissenting opinion of Judge Valliant in Smoot v. Judd (Mo.) 83 S. W. 507. See, also, State Ins. Co. v. Waterhouse (Iowa) 43 N. W. 611.

This court in Ray v. Harrison, 32 Okla. 17, sustained the admissibility of extrinsic evidence to contradict an officer's return of personal service, and likewise reaffirmed that doctrine in Jones v. Jones, 57 Okla. 442, 154 Pac. 1136. In neither of those cases, however, does it appear that the judgment involved contained any recitation of service. In Bruno v. Getzelman, 70 Oklahoma, 173 Pac. 850, the plaintiffs commenced an action in ejectment to recover 80 acres of land and sought to set aside two mortgage foreclosure judgments on the ground that process had not been served in either case. This court said that "An adjudication of the jurisdictional facts in a domestic judgment is conclusive in a collateral proceeding attacking such judgment by attempting to again put such facts in issue," and cited Blackwell v. McCall, 54 Okla. 96, 153 Pac. 815; Daugherty v. Feland, 59 Okla. 124, 157 Pac. 1144; Continental Gin Co. v. DeBord, 34 Okla. 66. No reference was made to Ray v. Harrison, supra, or Jones v. Jones, supra.

In Griffin v. Culp, 68 Oklahoma, 174 Pac. 495, this court said that "in the case of a domestic judgment of a court of general jurisdiction, want of jurisdiction cannot ordinarily be shown by extrinsic evidence in a collateral attack, but may be shown on a direct attack," and sustained the admissibility of extrinsic evidence to prove that a false return was part of a fraudulent scheme to confer jurisdiction on the court. Of course, extrinsic evidence is admissible in equity to show that the recital of service in the judgment was based upon a fraudulent return —where the plaintiff procured the false return or took a judgment upon it with knowledge that it was false, as held by the Missouri Supreme Court in Smoot v. Judd, 83 S. W. 481; New River Mineral Co. v. Seeley, 120 Fed. 193; Knox County v. Harshman, 133 U. S. 152, 33 L. Ed. 586; Walker v. Robbins, 14 How. (U. S.) 584, 14 L. Ed. 552; Miedreich v. Lauenstein, 232 U. S. 237; Caulk v. Lowe, 74 Oklahoma, 178 Pac. 101.

In Crist v. Cosby, 11 Okla. 635, the court held that "when the judgment of a court of record contains a finding that due personal service was made upon the defendant," it is conclusive and cannot be questioned in an injunction action. And said that the "finding and adjudication are prima facie evidence of due and legal service of summons, and the presumption thus raised cannot be overcome by allegation of the fact that the summons was not served until four days after the judgment was rendered"; and, further, that: "No one can contradict that which the record actually avers, and were not this the rule, the greatest confusion would prevail. There would be little, if any, solemnity to the judgment of the court, and a great multiplicity of suits would be the rule."

In Lausten v. Union National Bank, 70 Oklahoma, 173 Pac. 823, it is held that the truth of the affidavit upon which publication service is based is immaterial "until challenged in some recognized legal proceeding for the vacation of valid judgments," and that, the affidavit being sufficient on its face, whether true or false, the judgment was regular and valid on its face.

In Wheatland Grain & Lumber Co. v. Dowden, 26 Okla. 441, some of the defendants were not served with summons, but an attorney employed to represent part of the defendants entered an appearance for all the defendants, but failed to file any pleadings for those defendants for whom he was not attorney, and judgment was entered by default against them; they filed a motion to vacate the judgment on the ground that the attorney had no authority to represent them. This court held that parol evidence was admissible to show that the attorney had no authority, and ordered the judgment vacated, saying that it was not necessary for the defendants not served with process to show that they had a meritorious defense, and announced in the syllabus that "a void judg-

ment may be vacated at any time on motion by a party or other person affected thereby without setting up a meritorious defense."

In Continental Gin Co. v. DeBord, 34 Okla. 16. it is held that the finding of the court whose judgment was assailed that "the defendant appeared in person and by his attorney" cannot be impeached. That case is hardly in point here, because a finding by the court that the defendant appeared in person is a judicial finding based on physical facts under the eye of the court, and obviously cannot be impeached. Thus, in Harshey v. Blackmarr, 20 Iowa, 161, Judge Dillon said that a finding by a court that the defendant appeared by a certain attorney could be impeached by showing the attorney had no authority, but said: "Had the entry been that L. P. Perry came personally into court and waived process, it could not have been controverted. But the appearance by counsel who had no authority to waive process, or to defend the suit for L. P. Perry, may be explained." Thus, in Blyth & Fargo Co. v. Swenson, 15 Utah, 345, 49 Pac. 1027, the court held that the recital that defendant appeared by an attorney is conclusive of the appearance of the attorney, but not conclusive of the attorney's authority, and if he had no authority, then the judgment would be set aside.

In Rice v. Woolery, 38 Okla. 199, the first paragraph of the syllabus says:

"The judgment or decree of a domestic court of general jurisdiction reciting that the defendant was duly served with summons for more than 41 days prior to the date of the trial by publication of the warning order as required by law, is conclusive on collateral attack, and cannot be contradicted by extrinsic proof."

That decision was on demurrer to an answer averring that the publication notice against a nonresident was not for a sufficient length of time. The answer, to which the demurrer was sustained, appears from the statement of the case by Justice Dunn to have merely alleged "that the publication had was not sufficient in law to give the court jurisdiction of the person of the defendant, Farris Rice, or the estate sought to be affected; that the notice of publication was not for the statutory time before answer day." An analysis of that case shows the admissibility of extrinsic evidence to contradict the record was not involved; Justice Dunn merely held the recital of service was a conclusive adjudication of the sufficiency of the publication proceedings.

In Rice v. Theimer, 45 Okla. 618, the fifth paragraph of the syllabus by the court says:

"Where the order of the probate court in appointing a guardian recited in the order

of appointment that notice was given as required by Rev. Laws 1910, sec. 6522, the same is conclusive on collateral attack."

That was a litigation between third parties for the specific performance of a contract, incidentally involving the validity of a judicial decree. The issue arose over the question as to whether or not the plaintiff tendered a merchantable title. It was not a suit in equity for relief against the judgment on the ground that it was obtained without the service of process, nor was it a motion to vacate the judgment under subdivision 3 of section 5267, Rev. Laws 1910, hereinafter discussed.

In Blackwell v. McCall, 54 Okla. 96, it is said that—

"An adjudication of the jurisdictional facts in a domestic judgment is conclusive in a collateral proceeding attacking such judgment by attempting to again put such facts in issue."

That was a suit in the district court to set aside the judgment. It was expressly agreed that the purchasers of the land involved had paid a valuable consideration therefor, without notice of the plaintiff's claim that the former judgment was void. The record in the former judgment showed service.

From an examination of a great number of authorities, including text-writers and adjudicated cases, we find on one side the majority of decisions holding the recitation of service in a domestic judgment cannot be collaterally contradicted by extrinsic evidence, although such recital of service may be overcome by other parts of the judgment roll in irreconcilable conflict therewith. In such cases, the judgment or decree is sustained, not because a judgment rendered without notice and without service is good, but because the law does not permit the introduction of evidence to overthrow that which, for reasons of public policy, it treats as absolute verity. Black on Judgments, vol. 1, sec. 273. Lancaster v. Wilson, 27 Grat. (Va.) 629, states the reasoning of that line of decisions about as clearly as any we have examined. The Virginia court says that if judgments were always open to collateral attack, they would "no longer be a final adjudication of the rights of litigants, but the starting point from which a new litigation would spring up; acts of limitation would become useless and nugatory; purchasers on the faith of judicial process would find no protection; every right established by a judgment would be insecure and uncertain; and a cloud would rest upon every title."

The common-law authorities proceeded from the earliest times to hold that the memorials of courts import the most absolute and uncontrollable verity; that the rec-

ords always speak the truth and cannot be contradicted except by their own inspection. That holding no doubt originated largely from a fetish reverence for the common-law courts. The judgment roll at common law was as a physical fact a judgment roll—the proceedings from the beginning to the end were originally transcribed on a roll of parchment. As new steps were taken in the case, further entries were made upon this roll. But the judicial records in America are not kept and preserved with that great care and caution displayed by the old common-law courts in England. On that side of the question we find the federal cases. Walker v. Robbins, 14 How. 584, 14 L. Ed. 552; Knox County v. Harshman, 133 U. S. 152, 33 L. Ed. 586; Miedreich v. Lauenstein, 232 U. S. 236; Foster v. Givens, 67 Fed. 684; Bigelow v. Chatterton, 51 Fed. 614; Walker v. Cronkite, 40 Fed. 133; Lathrop v. Stewart, 14 Fed. Cas. No. 8112; Sargeant v. Indiana State Bank, 21 Fed. Cas. No. 12360. One wishing to pursue this line of cases should examine Smoot v. Judd (Mo.) 83 S. W. 481, as well as the cases cited in 23 Cyc. 1086, and Black on Judgments (2nd Ed.) vol 1, sec. 273. But it is unnecessary to examine and cite all the cases discussing this question. We have stated the theory upon which they rest, to wit: That public policy demands that the solemn judgments of courts of general jurisdiction shall not be made to depend for their stability and permanency upon any other evidence than the written monuments of their jurisdiction preserved in the judgment roll itself.

With profound deference to the distinguished courts on that side of the line, and with solemn realization of the great public importance of the question and the possible consequences of admitting extrinsic evidence to impeach the solemn judgments of courts, let us turn to the other line of cases, not for the purpose of compiling them numerically, but for the purpose of examining the reasons upon which they base their holding to the contrary. Black on Judgments (2nd Ed.) vol. 1, sec. 276 states the reasons underlying the opposing line of authorities with such force and vigor that we quote it here. Black says:

"First, there is the question of natural justice to the individual. To suffer a man to be condemned unheard, to permit him to be deprived of his property or his rights by proceedings of which he had no notice or in which he had no opportunity to be heard, is repugnant to every sentiment of fairness and right dealing, as well as wholly alien to the spirit of our jurisprudence. To sacrifice the individual to the welfare of the community is no doubt a very high principle of political ethics, but it is scarcely at home in the body of our law, except in matters of police. On the contrary, it is the guarantee which the law gives of the inviolability of every man's rights and estate that constitutes its best title to the respect and confidence of the people. True, it is said that a defendant who is injured by the rendition of a judgment against him without jurisdiction of his person, may procure its reversal in an appellate court, or move to vacate it in the court which rendered it, or go to equity with an application for an injunction. But this is no adequate safeguard. These remedies are often illusory. For it is very possible that he may remain entirely ignorant of the adjudication against him until long after his rights are irrevocably lost. In the second place, if the court had no jurisdiction, its proceedings are void; and if the action of the court was void, its memorial of that action is no record. This argument is put in a very clear light in an early New York case, where the learned judge, speaking of an alleged record, used the following language: 'It imports perfect verity, it is said, and the parties to it cannot be heard to impeach it. It appears to me that this proposition assumes the very fact to be established, which is the only question in issue. For what purpose does the defendant question the jurisdiction of the court? Solely to show that its proceedings and judgments are void, and therefore the supposed record is not in truth a record. If the defendant had not proper notice of, and did not appear to, the original action, all the state courts, with one exception, agree in opinion that the paper introduced as to him is no record; but if he cannot show, even against the pretended record, that fact, on the alleged ground of the uncontrollable verity of the record, he is deprived of his defense by a process of reasoning that is to my mind little less than sophistry. The plaintiffs in effect declare to the defendant: The paper declared on is a record, because it says you appeared, and you appeared because the paper is a record. This is reasoning in a circle. The appearance makes the record uncontrollable verity, and the record makes the appearance an unimpeachable fact. The fact which the defendant puts in issue is the validity of the record, and yet it is contended that he is estopped by the unimpeachable credit of that very record from disproving any one allegation contained in it. Unless a court has jurisdiction, it can never make a record which imports uncontrollable verity to the party over whom it has usurped jurisdiction, and he ought not therefore to be estopped, by any allegation in that record, from proving any fact that goes to establish the truth of a plea alleging want of jurisdiction.''

Certainly in a Nation composed of 48 states and a super-state, the federal government, each with a Constitution solemnly guaranteeing the right to life, liberty, and the pursuit of happiness, a citizen's rights should

never be foreclosed by a judgment without notice and without a hearing. Is it true that solemn acts of state Legislatures and the federal Congress can be stricken down by judicial decrees because they conflict with constitutional limitations prohibiting the taking of property without due process of law, and yet a citizen's savings of a lifetime can be impounded under an execution on a judgment of which he was wholly ignorant and which he had no opportunity to resist? To illustrate: A citizen by hard labor and economy has laid up enough to keep away the wolf in old age; realizing the inability of the government to wholly protect him from thieves, burglars, and highwaymen, he can lock his crib, bolt his doors, and arm himself to resist personal violence, yet he is utterly helpless to defend his rights against a judgment based upon a false return of an officer of the law; he has been taught from early childhood that neither his liberty nor property can be taken from him under the sanction of a judicial decree until he shall have had an opportunity to resist in a neutral forum the demands and claims of those who seek to despoil him; yet he is suddenly awakened to find the sale of all his property under an execution cannot be restrained, because public policy demands that he must be sacrificed upon the altar of the uncontrovertible verity and sanctity of a judicial decree of which he had no knowledge and which he had no means to resist. We cannot bring ourselves to the point of unqualifiedly adopting a rule in this state which closes the door of hope and shuts out the light of truth. We prefer to go with Illinois, Mississippi, Arkansas, Tennessee, Alabama, Iowa, New York, Colorado, Texas, and other states, and along with the great text-writers on judgments and Equity Jurisprudence. As said by Lord Coke, a judgment ought to be "the very voice of law and right."

Fortified with the safeguards hereinafter defined, we believe the ends of public policy will be fully satisfied and the ends of justice met by admitting extrinsic evidence to contradict the officer's return of service and the recital in a judgment of service, when the facts and circumstances clearly, cogently, and satisfactorily demonstrate that it would be unconscionable to permit a judgment to stand against a party who had no notice of the suit and no opportunity to defend his rights.

Without undertaking to harmonize the decisions of this court, the conflict being more apparent than real, we now lay down the following as the correct rules in this state, to-wit:

2. Relief based on evidence dehors the record may be had against a judgment rendered without service of process, under the third subdivision of section 5267, Rev. Laws 1910, empowering the court to vacate or modify its own judgments or orders at or after the term at which such judgment or order was made, on account of "irregularity in obtaining a judgment or order." Such motion under section 5274, Rev. Laws 1910, must be presented within three years after the rendition of the judgment or order. Canadian & A. Mortg. & Tr. Co. v. Clarita Land & Inv. Co. (Cal.) 74 Pac. 301; People ex rel. v. Temple (Cal.) 37 Pac. 414; Scott v. Le-Ballister, 37 Wash. 5, 79 Pac. 481; Kohn v. Haas, 95 Ala. 478, 12 So. 577; State v. District Court, 38 Mont. 166, 99 Pac. 291; Johnson v. Johnson, 40 Ala. 247; Wheatland Grain & Lumber Co. v. Dowden, 26 Okla. 441; Nicoll v. Midland Sav. & Loan Co., 21 Okla. 591; Baker v. Stonebraker, 32 Okla. 88; Richardson v. Howard, 51 Okla. 240, 151 Pac. 887; Frost v. Akin, 60 Okla. 174, 159 Pac. 752; Harding v. Gillett, 25 Okla. 199; Ozark Marble Co. v. Still, 24 Okla. 559; Hockaday v. Jones, 8 Okla. 156; Dane v. Daniel (Wash.) 68 Pac. 446; Hansen v. Wolcott, 19 Kan. 207; Leforce v. Haynes, 25 Okla. 190; First Nat. Bank v. Grimes Dry Goods Co., 45 Kan. 510, 26 Pac. 56. If it be necessary to resort to extrinsic evidence to show the invalidity of a judgment, the motion to vacate must be presented within the three years following the rendition of the judgment or order, otherwise every judgment, valid upon the face of the record, will depend for its perpetuity upon the frail memory of man. We refuse to follow those cases apparently holding that a judgment rendered without service of process, though valid on its face, may be vacated at any time upon motion. Those cases fail to distinguish between judgments valid on their face and those void on their face. See Edwards v. Smith, 42 Okla. 544, correctly holding that "a judgment is not void in the legal sense for want of jurisdiction unless its invalidity and want of jurisdiction appear on the record; it is voidable merely."

This statutory remedy during the three years following the rendition of the judgment is exclusive of relief in equity, unless there be special reasons in the particular case why the statutory remedy is inadequate. Frost v. Akin, 60 Okla. 174, 159 Pac. 752; 15 Standard Proc., p. 277; Crist v. Cosby, 11 Okla. 635; State v. District Court, 38 Mont. 166, 99 Pac. 291; Harris v. Smiley, 36 Okla. 89; Gale Mfg. Co. v. Sleeper (Kan.) 79 Pac. 648.

Extrinsic evidence is admissible to contradict the officer's return of service and to show that process was not served on defendant. Wheatland Grain & Lumber Co. v. Dowden, 26 Okla. 441; First National Bank v. Grimes

Dry Goods Co., 45 Kan. 510, 26 Pac. 56; Dane v. Daniel (Wash.) 68 Pac. 446; Blyth & Fargo Co. v. Swenson, 15 Utah, 345, 49 Pac. 1027; People ex rel. v. Temple, 103 Cal. 447, 37 Pac. 414; Reinhart v. Lugo, 86 Cal. 395, 21 Am. St. Rep. 52; Vilas v. Plattsburg & Montreal R. Co., 123 N. Y. 440, 20 Am. St. Rep. 771; Taylor v. Granite State Provident Ass'n, 136 N. Y. 343, 32 Am. St. Rep. 749; Heffner v. Gunz, 29 Minn. 108, 12 N. W. 342; Parker v. Spencer, 61 Tex. 155; Scott v. LeBallister (Wash.) 79 Pac. 481; Griffin v. Culp. 68 Oklahoma, 174 Pac. 495; Hanson v. Wolcott, 19 Kan. 207; Savings Bank, etc., v. Arthur, 52 Minn. 98, 53 N. W. 812. And it is unnecessary for the motion to vacate to be supported by an answer showing a meritorious defense. Wheatland Grain & Lumber Co. v. Dowden, 26 Okla. 441; Ozark Marble Co. v. Still, 24 Okla. 559; Leforce v. Haynes, 25 Okla. 190; Hanson v. Wolcott, 19 Kan. 207; Savings Bank, etc., v. Arthur, 52 Minn. 98, 53 N. W. 812; Norton v. Atchison, etc., R. Co, 97 Cal. 388, 33 Am. St. Rep. 198.

A plaintiff, to reassure himself of actual personal service, when defendant fails to enter his appearance under the first summons returned by the officer as served, may have another summons issued and returned by a different member of the sheriff's deputies, before proceeding to take a default judgment, and by this means put into the record cumulative evidence of service.

3. As said in People v. Greene, 74 Cal. 400, 16 Pac. 197, "a judgment which is void upon its face and requires only an inspection of the judgment roll to demonstrate its want of vitality, is a dead limb upon the judicial tree which should be lopped off, if the power to do so exists. It can bear no fruit to the plaintiff, but is a constant menace to the defendant." Under the clause of section 5274, Rev. Laws 1910, providing that "a void judgment may be vacated at any time on motion of a party or any person affected thereby," a judgment void upon its face may be vacated at any time by the court rendering such judgment (Arnold v. Joines, 50 Okla. 4, 150 Pac. 130); and, as said in Gille v. Emmons (Kan.) 48 Pac. 569, "the court was (is) not hampered by a limitation of time." A judgment is void on its face when it so appears by an inspection of the judgment roll, but will not be held void on its face unless the record thereof affirmatively shows the court was without jurisdiction to render it. Canadian & A. Mortg. & Tr. Co. v. Clarita Land & Inv. Co. (Cal.) 74 Pac. 301; People ex rel. v. Temple (Cal.) 37 Pac. 414; Whitney v. Daggett (Cal.) 41 Pac. 471; People v Davis (Cal.) 77 Pac. 651; State v. District. Court, 38 Mont. 166, 99 Pac. 291; Scott v.

LeBallister, 37 Wash. 5, 79 Pac. 481; White v. Ladd, 41 Ore. 324, 93 Am. St. Rep. 732; Baker v. Stonebraker, 32 Okla. 88; Anglea v. McMaster, 17 Okla. 501; Spaulding & Co. v. Chapin (Cal. App.) 174 Pac. 334. A judgment void on its face may be vacated upon motion, no matter what length of time has interposed since its rendition; neither is it necessary for the movant to show any meritorious defense, nor can the court impose any conditions for vacating it. See long list of cases in annotation to Furman v. Furman, 60 Am. St. Rep. 642, 643; Blyth & Fargo Co. v. Swenson, 15 Utah, 345, 49 Pac. 1027; Harris v. Hardeman, 14 How. 337, 14 L. Ed. 444; Condit v. Condit, 66 Oklahoma, 168 Pac. 456.

4. When it clearly appears that a party not served with process, against whom a default judgment, valid on its face, has been taken, had no notice or knowledge of such judgment until after three years from its rendition (15 Standard Ency. of Proc. p. 275), or in too short a time before the three years expired to file a motion to vacate, he may file a suit in equity against the plaintiff to enjoin the enforcement of such judgment. We are referring to a case where extrinsic evidence is relied upon to show no service of summons, provided the ultimate relief is not barred by some other statute of limitations, if any, a question which we are not now considering.

23 Cyc. 996, says:

"Equity may vacate or enjoin a judgment in an action of which defendant had no legal notice, the trial court assuming jurisdiction on the strength of a false return of service of process by the sheriff or other officer. Earlier decisions holding that the party's only remedy was by an action against the officer are inconsistent with the modern rules."

The law is thus stated in Freeman on Judgments (4th Ed.) sec. 495:

"A judgment pronounced without service of process, actual or constructive, and without the defendant's knowledge that a court had been asked to adjudicate upon his rights, is regarded with such disfavor at law that a variety of motions, writs, and proceedings are there provided to overthrow it; and in many courts it is at all times and upon all occasions liable to be entirely disregarded upon having its jurisdictional infirmity exposed. But proceedings in equity are peculiarly appropriate for the exposure of this infirmity. They permit of the formation of issues upon the question of service of process, and of the trial of those issues after full opportunity has been given to those who seek to sustain as well as those who seek to avoid the judgment. If at such trial it satisfactorily appears that the defendant was not summoned and had no notice of the suit, a sufficient excuse is shown for his neglect to defend, and equity will not

allow the judgment, if unjust, to be used against him, **no matter what jurisdictional recitals it contains."** (Emphasis ours.)

In 1 Black on Judgments, sec. 377, the law is thus stated:

"Equity may vacate or enjoin the judgment of a court of law when it is shown to be unjust, and that the court rendering it never had jurisdiction of the person of the defendant, although assuming it in consequence of a false return of service of the sheriff or other officer."

Pomeroy's Equity Jurisprudence (4th Ed.) vol. 5, sec. 2084, says:

"In many cases courts of equity will interfere to prevent injustice when a court of law has acted without jurisdiction. This interference is based on the inequitable results which follow, **and frequently is wholly independent of any wrong on the part of the prevailing party One of the commonest illustrations is found in cases where no jurisdiction has been obtained because there has been no service of summons or process.** The rule seems to be that where the failure to serve a party results in his inability to answer, relief will be granted. On the point as to whether a meritorious defense must be shown, the courts are divided. The question is discussed more at length in a subsequent paragraph. The defect in service may not be apparent on the record, or, again, the record itself may show the want of jurisdiction. In the former case the question arises as to whether a return can be attacked. It was formerly held by common-law courts that their judgments purported absolute verity. If the jurisdiction of the court depended upon the false return of an officer to the service of process, the party injured could maintain an action against the officer, but he could not be relieved from the judgment. The modern equity cases have greatly ameliorated this harsh doctrine, and it can be safely stated that the general rule, by the weight of authority, is that a return may be attacked in an action to set aside the judgment. The justice of this rule requires no argument. The remedy at law against an officer is at best of a very doubtful character, and in many cases damages, if recovered, are a wholly inadequate remedy; for example, where the action is for the recovery of land. Some courts, however, have laid down the rule that an officer's return cannot be attacked unless it is wilfully false and has been procured by the plaintiff at law. The effect of this is to make the basis of the equity action fraud by the plaintiff at law. The injured party must, if no fraud be shown, depend upon his remedy against the officer. It is everywhere held, however, that the officer's return is prima facie evidence of regularity. The court in a default judgment must find that there has been due service. This finding will be presumed to be correct. Therefore, in order to impeach it, clear and satisfactory evidence must be produced." (Emphasis ours.)

A careful examination of the text-writers and cases convinces us that the decided weight of authority supports the view that modern equity will grant relief from such a judgment. See Little Rock & Ft. Smith R. Co. v. Wells, 54 Am. St. Rep. 216, and long annotation; 15 Standard Proc., p. 296; 2 Story Eq. Jur. sec. 887; Am. & Eng. Ency. of Law (2nd Ed.) vol. 16, p. 388; High on Inj., vol. 1, sec. 222; Joyce on Inj., vol 1, secs. 631-633; People ex rel. v. Temple, 103 Cal. 47, 37 Pac. 414; Black on Judg. (2nd Ed.) vol. 1, secs. 348 and 376-377, etc.; Great West Min. Co. v. Mining Co., 12 Colo. 46, 13 Am. St. Rep. 204; Johnson v. Gregory & Co., 4 Wash. 109, 31 Am. St. Rep. 907; Nat. Metal Co. v. Greene Consol. Co., 9 L. R. A. (N. S.) 1062 (Ariz.); Huntington v. Crouter, 33 Or. 408, 72 Am. St. Rep. 726; Hilt v. Humberger, 235 Ill. 235, 85 N. E. 304; Hamblen v. Knight, 60 Tex. 36; Larr. v. Stein, 97 Neb. 488, 150 N. W. 655; Campbell Pt. Press & Mfg. Co. v. Morden, 50 Neb. 283, 65 Am. St. Rep. 573: Duncan v. Gerdine, 59 Miss. 550; Hanswirth v. Sullivan, 6 Mont. 203, 9 Pac. 798; Vaule v. Miller, 69 Minn. 440, 72 N. W. 452; see, also, long list of cases cited by Judge Valliant in his dissenting opinion in Smoot v. Judd (Mo.) 83 S. W. 518.

5. The right to appeal to equity being based on inadequacy of legal remedies (Frost v. Akin, 60 Okla. 174, 159 Pac. 752), we think it just that a defendant seeking relief in a court of equity from a judgment obtained without service of process should be required to show a good defense to the action. That is, where the defendant seeks to show by extrinsic evidence—evidence dehors the record in which the judgment was rendered—that no process was served on him, he must show in his bill in equity that he had a good defense against the plaintiff's claim upon which the judgment at law or in equity was based. There is a conflict of authority on this question, but we agree with that line of cases holding that a good defense must be shown in order to avoid a default judgment when equity is applied to for relief. 23 Cyc. p. 994; Pomeroy's Eq. Jur. (4th Ed.) vol. 5, sec. 2088; Brandt v. Little, (Wash.) 91 Pac. 765; Black on Judgments (2nd Ed.) vol. 1, secs. 376, 377; 15 Standard Proc., pp. 262,-268, 270, 271, and long list of cases; Prudential Casualty Co. v. Kerr, (Ala.) 80 South. 97; Newman v. Taylor, 69 Miss. 670, 13 South. 831; Anderson v. Oldham, 82 Tex. 228, 18 S. W. 557; Hockaday v. Jones, 8 Okla. 156. Pomeroy, supra, says that in cases where the attack in equity is on the ground that the judgment was rendered without jurisdiction because there was no service of summons, "the prevailing view is that even there a good

defense on the merits must be shown." Not only must the party against whom the default judgment has been taken without service of summons, when he relies upon extrinsic evidence—evidence dehors the judgment roll —to prove the want of jurisdiction, show a meritorious defense, but he must not be guilty of laches or negligence. Annotations in 60 Am. St. Rep. 640; Nat. Metal Co. v. Greene Consol. Co., 9 L. R. A. (N. S.) 1062; Fox v. Robins, (Tex. Civ. App.) 62 S. W. 815; Ind. L. & Tr. Co. v. Owen, 63 Oklahoma, 162 Pac. 818; Harrison v. Hargrove, 109 N. C. 346. When such party applies to equity, he must offer to do equity, and where there has been a long lapse of time and it appears that the innocent plaintiff in the default judgment case is placed at disadvantage on account of the delay, the court may weigh the corresponding equities between the parties, and if it appears that the cause of action of the plaintiff to the default judgment is barred by the statute of limitations, a court of equity may require the defendant to the default judgment to waive the plea of the statute of limitations, so that the parties may proceed as nearly as possible to litigate the issues as of the date of the original action in which the default judgment was rendered, or he may be required to pay the judgment in advance. 15 Standard Proc., p. 272. It is well settled that a court of equity will administer such relief as the exigencies of the particular case demand, and that its modes of relief are not fixed and rigid. It can mold its remedies to meet the conditions with which it has to deal, the jurisdiction of equity being the whole domain of conscience limited by legislative enactment only." Graselli Chemical Co. v. Aetna Explosives Co., 252 Fed. 456; Bloomquist v. Farson, (N. Y) 118 N. E. 855; Thatcher v. Thatcher (Me.) 104 Atl. 515; Earle v. American Sugar Refining Co. (N. J.) 71 Atl. 391; Story's Eq. Jur. (14th Ed) vol. 1, sec. 578. And a court of equity may impose all the conditions provided for by section 5272, Rev. Laws 1910.

6. We reaffirm the doctrine of Edwards v. Smith, 42 Okla. 544, holding that "a judgment is not void in the legal sense for want of jurisdiction, unless its invalidity and want of jurisdiction appear on the record; it is voidable merely." This is a sound doctrine, well supported by the text-writers and adjudicated cases. While extrinsic evidence—evidence dehors the record—is admissible, either in support of a motion to vacate a judgment, filed within three years after its rendition, or in support of a bill in equity filed at any time, to contradict the officer's return of service or the recital of service of process in the judgment, nevertheless such judgment, if valid on its face, is not legally void in the sense that it cannot be the basis of the right

and title of a bona fide purchaser of property sold under the authority of such judgment. In Smoot v. Judd (Mo.) 83 S. W. 481, the court, in an elaborate opinion holding that public policy excludes the introduction of extrinsic evidence to impeach the officer's return of service or contradict the recital of service in the judgment, also held that the plaintiff's title as purchaser at a sheriff's sale of the defendant's property on an execution based on such judgment was valid—that the purchasing plaintiff was an innocent party because he had no knowledge of the falsity of the officer's return. We disagree with that conclusion. Courts were made primarily for plaintiffs, and not for defendants, and in a certain qualified sense the plaintiff is sponsor for the errors and irregularities committed by a court acting as his agent to enforce his rights. It is the plaintiff's business to see that process is in fact served, and, while he has the right to rely on the machinery furnished by law for service, he, and not defendant, must suffer if the machinery he puts in motion does not work safely. Where one of two innocent persons must suffer by the act of a third, he who has enabled such third person to occasion the loss must suffer. Nat. Safe. Dep. Co. v. Hibbs, 229 U. S. 391. Whether or not the plaintiff had any notice or knowledge of the falsity of the return of service, he can never occupy the position of bona fide purchaser under a judicial sale in a proceeding instituted by him Arnold v. Joines, 50 Okla. 4, 150 Pac. 130; Hubbard v. Ogden, 22 Kan. 671.

In Smoot v. Judd, supra, it is said that it would be a fraud for the plaintiff, though ignorant of the falsity of the officer's return of service at the time of its return, to take a default judgment against the defendant with knowledge of its falsity at the time the judgment was rendered, and that under such a state of facts, the defendant could have relief in equity. There is a very narrow margin between the plaintiff who claims the fruits of a judgment based on a false return of service, and a plaintiff who obtains a default judgment with knowledge of the falsity of the officer's return. In the absence of the most extraordinary circumstances appealing strongly to the conscience of the chancellor, we will not permit a plaintiff in this state to hold on to a judgment based upon a false return of an officer. But, as said in Boone v. Chiles, 10 Pet. 210, "bona fide purchasers are its (equity court's) most especial favorites." Bona fide purchasers of property sold under a judgment not void on its face, as herein defined, will be protected against either a motion to vacate or a bill in equity to annul or evade such judgment, although extrinsic evidence would show that the officer's return of service of summons was false, or that the recital of service of process in the

judgment was untrue. As pointed out, those courts excluding extrinsic evidence to show want of jurisdiction for lack of service of process, do so, not because a judgment without service is good, but because public policy will not permit the introduction of extrinsic evidence to overcome that which it treats as absolute verity. While we do not subscribe to the doctrine that public policy closes the door absolutely and at all times against the introduction of extrinsic evidence to impeach the officer's return of service, or the recital of service in the judgment, we do hold that public policy shuts the door against such extraneous evidence when to admit it will strike down the rights of innocent third parties. A purchaser who is not a party to the proceedings is not bound to look beyond the judgment, if the facts necessary to give the court jurisdiction appear on the face of the proceedings. If the jurisdiction has been improvidently exercised, it is not to be corrected at the expense of one who had the right to rely upon the order of the court as an authority emanating from a competent source. Section 5176, Rev. Laws 1910, providing that if any judgment "in satisfaction of which any lands or tenements are sold, shall at any time thereafter be reversed, such reversal shall not defeat or affect the title of the purchaser or purchasers," while not exactly applicable to a case like this, is a statutory expression of the public policy of this state. If the purchaser under such judgment, not void on its face, had no notice of the falsity of the officer's return or the recital of service in the judgment, and pays a valuable consideration, relying upon the face of the record, his rights are superior to the defendant's. See Harrison v. Hargrave, 120 N C. 96, 58 Am. St. Rep. 781; Sutton v. Shonwald, 86 N. C. 198, 41 Am. Rep. 455; Davis v. Dresback, 81 Ill. 393; Dunklin v. Wilson, 64 Ala. 162; Wilson v. Hoffman (N. J. Eq.) 50 Atl. 592; Fox v. Robbins, (Tex. Civ. App.) 62 S. W. 815; Cassidy v. Automatic Time-Stamp Co., 185 Ill. 431, 56 N. E. 1116; Reeve v. Kennedy, 43 Cal. 643, 650; Stokes v. Geddes, 46 Cal. 17; Friebe v. Elder, 181 Ind. 597, 105 N. E. 151; Hilt v. Heimberger, 235 Ill. 235, 85 N. E. 304; McCormick v. McClure, 6 Blackf. 466, 39 Am. Dec. 441; Taylor v. Boyd, 3 Ohio, 337, 17 Am. Dec. 603; Gould v. Sternberg, 128 Ill. 510, 15 Am. St. Rep. 138; Reynolds v. Harris, 14 Cal. 667, 76 Am. Dec. 459; Hudepohl v. Liberty Hill Water Co., 94 Cal. 588, 28 Am. St. Rep. 149; Macklin v. Allenberg, 100 Mo. 337, 13 S. W. 350. In Ray v. Harrison, 32 Okla. 17, the plaintiffs were purchasers under the execution sale. Subsequently one of the plaintiffs conveyed his interest to Harrison, but he does not appear to have interposed a plea of bona fide purchaser. Neither was the question of bona fide purchaser discussed in Jones v. Jones, 57 Okla. 442, 154 Pac. 1136

7. Sound public policy, the stability of solemn judgments of courts, and the security of litigants demand that neither the officer's sworn return nor the recital of service in the judgment based thereon shall be set aside or contradicted except upon the most satisfactory evidence. The evidence must be clear, cogent, and convincing, and, as said in Kochman v. O'Neill (Ill.) 63 N. E. 1047, "Every presumption in favor of the return is indulged, and it will not be set aside upon the uncorroborated testimony of the party upon whom service purports to have been made." Nor can the officer making the return upon which the judgment was rendered contradict it. Duncan v. Gerdine, 59 Miss 550. As said in Randall v. Collins, 58 Tex. 231, "It is not like an ordinary issue of fact, to be determined by a mere preponderance of testimony." See, also, Quarles v. Hiern, 70 Miss. 891; Hunt v. Childress, 5 Lea (Tenn.) 247; U. S. v. Gayle, 45 Fed. 107; Driver v. Cobb, 1 Tenn. Ch. 490; Ray v. Harrison, 32 Okla. 17, Ann. Cas. 1914-A, p. 443; Jones v. Jones, 57 Okla. 442, 154 Pac. 1136; also annotations in 124 Am. St. Rep. beginning on page 770; see, also, Kemper v. Jordan, 7 Tex. Civ. App. 275, 26 S. W. 870, and Becker v. Becker (Tex.) 218 S. W. 542, holding the testimony of the officer must be met by the oath of two witnesses or of at least one with strong corroborating circumstances.

8. Defendant, however, insists that the foreclosure judgment is void on its face, because her husband, Isaac Leonard, was not a party to that suit; that the land involved was the family homestead, and that the husband was an indispensable party to the foreclosure action and without him before the court the foreclosure judgment and sale thereunder are void. If it appears from an inspection of the judgment roll in the foreclosure case that Isaac Leonard, the husband, was not a party, then the judgment so far as he is concerned is a void judgment, within the meaning of section 5274, Rev. Laws 1910, and may be set aside or ignored at any time.

9. Before we can consider the question as to whether or not the husband was a party to that case by service of process, either actual or constructive, it is necessary to decide whether or not the wife, the owner of the homestead in fee, can raise that question. Section 2 of article 12, Williams' Ann. Oklahoma Constitution, exempts the family homestead from forced sale, "for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon." The same section of the Constitution prohibits alienation of the homestead "without the consent of his or her spouse, given in such manner as may be prescribed by law," providing,

however, that the homestead may be mortgaged by the husband and wife joining therein and that it may be sold on foreclosure to satisfy such a mortgage. Section 1143, Rev. Laws 1910, provides that "no mortgage * * * shall be valid unless reduced to writing and subscribed by both husband and wife." In Whelan v. Adams, 44 Okla. 696, 145 Pac. 1158, this court said:

"It must be remembered that it (meaning the homestead) is not the homestead of the husband alone, though the title be in his name; it is the homestead of the family, made so by the Constitution."

In Gooch v. Gooch, 38 Okla. 300, this court said:

"The family homestead may consist of more than one tract of land, and may be owned by either the husband or his wife, or by both jointly, or one tract may be owned by one and the other tract owned by the other, so long as the aggregate number of acres occupied as a homestead does not exceed 160 acres."

And in that case cited approvingly Ehrick v. Ehrick, 106 Iowa, 614, 68 Am. St. Rep. 330, wherein the court held that, although the homestead had been set apart out of the property of the wife, the husband nevertheless had full right to live upon and cultivate the homestead, although the wife chose to live apart from the husband, and that so long as the wife elected to live elsewhere she was not entitled to any benefit from the homestead, the husband being entitled to occupy and enjoy the same.

Alton Mercantile Co. v. Spindel, 42 Okla. 210, holds that "the homestead is for the benefit of the entire family, and such joint interest is to be regarded as paramount to the rights of any individual member thereof," and that "no act or omission on the part of the husband, without the consent of his spouse, can result in an abandonment of the homestead by the family."

Thus, the homestead interest is jointly vested in husband and wife, although the title to the land may be entirely in one spouse; the homestead interest is a creature of the Constitution and statutes, nothing like it being known at common law; it is a special and peculiar interest in real estate and has been variously characterized by different courts as an exemption, a fee, a freehold estate, or a life estate, but we deem it unnecessary to define it with precision in this case 21 Cyc. 460. It survives the death of either or both the husband and wife. Union Trust Co. v. Cox, 55 Okla. 68, 155 Pac. 206. It is a right jointly vested in the husband and wife for the benefit of themselves and family. The mortgage executed by defendant and her husband would have been utterly void (Whelan

v. Adams, 44 Okla. 696, 145 Pac. 1158) unless the husband had joined in its execution, although he may have been living separate and apart from the defendant, and may have abandoned her without justifiable cause. If the husband was not a party to the foreclosure proceedings, he would not be bound by the foreclosure decree (Shanks v. Norton [decided by this court May 11, 1920]) and his homestead rights in the land would remain unimpaired. He would have the right to continue to occupy and enjoy the land as the homestead, and that right to continuous occupancy and enjoyment carries with it the right to have his family reside with him on the homestead. This means that the husband has the right to have his wife live with him on the homestead, as a part of the family, and likewise the wife has the right to reside with the husband on the homestead. A sale of the homestead under a mortgage foreclosure decree against one of the spouses cannot operate to force a separation between husband and wife. We know of no legal proceeding for the partition of the homestead right between husband and wife—a partition of this peculiar estate, interest, or right known as a homestead. If the husband was not a party to the foreclosure proceedings, the wife has a right to continue in possession of the land, without regard to whether or not her title as the owner of the land was divested by sale under the foreclosure proceedings. The husband's interest in the homestead, the title to the land being in the wife, is not a mere inchoate one, to become vested after her death, that may be disposed of by judicial sale under a foreclosure action against the wife, but the occupation of it as a home gives the husband a right therein without any further act on his part, or anyone for him, which cannot without joint consent be divested. If the husband had been a party defendant in the foreclosure case, he might have denied the execution of the mortgage, might have denied that he executed it, or pleaded payment of the debt, or made some other valid defense. If he had not executed the mortgage, or if his name had been forged thereto, the mortgage would have been void as to both husband and wife. If the husband was not a party to the foreclosure proceedings, his homestead rights remain unimpaired, and the wife, by virtue of the husband's homestead interest, has the right to remain in possession of the land without the necessity of paying rent to the purchaser under the foreclosure sale, or his assigns, and may question the jurisdiction of the court on this ground.

This peculiar interest, denominated homestead, cleaves and adheres so closely to the title to the land itself that it cannot be divorced therefrom by a mortgage foreclosure

sale under a court decree to which either husband or wife is not a party. If both husband and wife are not made parties, the judgment and sale are utterly void and the purchaser takes no title. Of course, the children are not necessary parties so long as the husband or wife is the head of the family, because the children are represented by the father and mother and their interest may be extinguished by abandonment or a deed executed by the father and mother without their consent. We realize there is a conflict of authority on this question, but our decision as above outlined is the logical sequence of joint ownership of the homestead right. These conclusions are supported by the following authorities: Hefner v. Urton, 71 Cal. 479, 12 Pac. 486; Willis v. Whitead (Kan.) 52 Pac. 445; Hofman v. Demple (Kan.) 37 Pac. 976; Brackett v. Banegas, 116 Cal. 278, 58 Am. St. Rep. 164; Chase v. Abbott, 20 Iowa, 154; Tadlock v. Eccles, 20 Tex. 782; Larson v. Reynolds, 13 Iowa, 579; Jones on Mortgages (7th Ed.) vol 2, sec. 1423; 21 Cyc. 556; Busenbark v. Busenbark, 33 Kan. 572, 7 Pac. 245; Dane v. Daniel (Wash.) 68 Pac. 446.

10. The assault made by the defendant, Becky Pettis, on the judgment in the foreclosure proceedings in the district court is a collateral attack. A collateral attack on a judicial proceeding is an attempt to avoid defeat, or evade it, or to deny its force and effect in some manner not provided by law; that is, in some other way than by appeal, writ of error, certiorari, or motion for a new trial. We are not attempting to name all the methods falling within the scope of a direct attack, but in this case the judgment in the foreclosure proceedings is not assailed by any method prescribed by law for correcting erroneous judgments. A successful collateral attack on a judgment does not operate to set aside or vacate such judgment—the judgment is merely avoided or evaded. Morrill v. Morrill, 23 Am. St. Rep. 95. Where a judgment forms a link in a litigant's chain of title, and the opposing party, plaintiff or defendant, in his pleadings, or by objecting to its introduction in evidence, assails its validity for defects in the record on which the judgment is based, the attack is collateral and not direct. 23 Cyc. 1063-1064, and authorities; also Bruno v. Getzelman, 70 Oklahoma, 173 Pac. 850, and 15 Standard Proc., p. 389. A judgment is good against collateral attack unless it is absolutely void for want of jurisdiction in the court rendering the judgment to decide any of the questions Van Fleet on Col. Attack, sec. 16; Moffer v. Jones, 67 Oklahoma, 169 Pac. 652. That the attack made on the judgment in the foreclosure proceedings is collateral, is settled by the decisions in Griffin v. Culp, 68 Oklahoma, 174 Pac. 495; Continental Gin Co. v. DeBord, 34

Okla. 66; Blackwell v. McCall, 54 Okla. 96; Rice v. Theimer, 45 Okla. 618; Rice v. Woolery, 38 Okla. 199; Edwards v. Smith, 42 Okla. 544; Cushing v. Cummings, 72 Oklahoma, 179 Pac. 762; Bruno v. Getzelman, 70 Oklahoma, 173 Pac. 850; 15 Standard Proc., p. 282.

11. Having held that defendant had the right to question the jurisdiction of the court to render the foreclosure judgment against her husband, we will dispose of that question, Defendant avers that no summons was served on her husband, and that the attempted service of summons by publication was void. In the default foreclosure judgment it is recited that Isaac Leonard, "having been duly summoned as by law required, came not, but wholly made default." Is this finding of service on Isaac Leonard conclusive against collateral attack? The foreclosure judgment does not recite personal service of summons on Isaac Leonard, but defendant attached to her answer in this case what she alleges to be a "true and correct copy of all the proceedings in said cause (meaning the foreclosure case) and makes same a part of this answer." The sufficiency of the answer will be tested by its averments construed in connection with the facts disclosed in the transcript attached thereto as an exhibit. Southern Surety Co. v. Municipal Excavator Co., 61 Okla. 215, 160 Pac. 617; Davis v. Board of Com., 58 Okla. 77. There being no clear and unequivocal recital in the foreclosure judgment that summons was served personally on Isaac Leonard, we may readily resort to the entire record in the foreclosure case for the purpose of ascertaining what kind of service of process, if any, was had on Isaac Leonard. The plaintiff's demurrer admits the allegations in the answer, and on the demurrer we will treat the transcript of the record in the foreclosure case as equivalent to the judgment roll substantially provided for by section 5146, Rev. Laws 1910. The recital of service in a judgment is not conclusive where it is positively contradicted by and in irreconcilable conflict with the record—the judgment roll. Black on Judgments, vol. 1, sec. 273. Resort to the record to impeach a recital in the judgment attacked means a resort to the entire record—the judgment roll. Core v. Smith, 23 Okla. 909; Towne v. Milner, 31 Kan. 207, 1 Pac. 613; Head v. Daniels, 38 Kan. 1, 15 Pac. 911; Ogden v. Walters, 12 Kan. 282. In support of a judgment collaterally attacked, every intendment will be indulged to uphold and support it; if the judgment thus assailed contains no recital of service of process and the record is barren of evidence of the issuance and service of process, then the service of process will be presumed and this presumption of service stands until overcome by evidence to the contrary Black on Judgments, vol. 1, sec. 271; Rogers

v. Miller, (Wash.) 52 Am. St. Rep. 20; Carey v. Reeves, 32 Kan. 723, 5 Pac. 22; Head v. Daniels, 38 Kan. 12, 15 Pac. 911; Coit v. Haven, 30 Conn. 190, 79 Am. Dec. 244; Mulvey v. Gibbons, 87 Ill. 367; Hardy v. Beaty, 84 Tex. 562, 31 Am. St. Rep. 80; Iams v. Root (Tex. Civ. App.) 55 S. W. 411. But if it appear positively that process was served in a particular mode, no other and different service will be presumed—that is to say, where the record itself explicitly and positively shows a particular kind of service and is in irreconcilable conflict with any reasonable presumption of other service, then the character of service disclosed by the record is the one upon which the jurisdiction of the court must depend. This subject is fully discussed in Coit v. Haven, supra, and Black on Judgments, vol 1, secs. 270 to 281, inclusive; see, also, Bank v. Richardson, 34 Or. 518, 75 Am. St. Rep. 664. The record in the foreclosure case shows a summons issued for Isaac Leonard; that on the same day the officer made return of no service, the attorney for the plaintiff in the mortgage foreclosure case made and filed the following affidavit:

"Affidavit to Obtain Service by Publication.

"State of Oklahoma, Carter County, ss.

"In the District Court Within and for the County and State Aforesaid.

"The Farmers Loan and Security Company, Plaintiff, vs. Becky Leonard and Isaac Leonard, Defendant.

"Affidavit to Obtain Service by Publication.

"W. T. Roberts, being duly sworn according to law, says that he is the attorney for above named plaintiff and that on the 19th day of April, 1912, said plaintiff filed in said district court a petition against said defendants Becky Leonard and Isaac Leonard showing that therefore the said defendants were indebted to plaintiff one note in the sum of $200.00 and interest, that said indebtedness is secured by mortgage lien on certain real estate therein described.

"Affiant Further Says: That this action is brought for debt and foreclosure of mortgage lien.

"Affiant Further Says, that the said defendant Isaac Leonard is a nonresident of the state of Oklahoma, and that the service of summons cannot be made on the said defendant Isaac Leonard within the said state of Oklahoma, and that the said plaintiff wish to obtain service on said defendant by publication; and further affiant saith not.

"W. T. Roberts,
"Atty. for Plaintiff.

"Subscribed and sworn in my presence and sworn to before me this 27th day of April, A. D. 1912.

"S. F. Haynie, Clerk.
"By S. M. Parker, Deputy.

(Seal)

"Affidavit to obtain service by publication.

"Filed: Apr. 27, 1912.

"S. F. Haynie, Clerk District Court."

We conclude that the only service on Isaac Leonard, and the service referred to by the court in the foreclosure decree, was the service by publication, there being no express recitation in the foreclosure decree that personal service of summons was had on Isaac Leonard. The publication notice is as follows:

### "Notice for Publication.

"State of Oklahoma, Carter County.

"In the District Court.

"The Farmers Loan and Security Co. Plaintiff vs. Becky Leonard and Isaac Leonard, Defendants. No. 1408.

"Said defendant, Isaac Leonard, will take notice that he has been sued in the above named court upon debt and foreclosure of mortgage, and must answer the petition filed herein by said plaintiff on or before the 13th day of June, A. D. 1912, or said petition will be taken as true, and a judgment for said plaintiff in said action for foreclosure of mortgage will be rendered accordingly.

"Dated this 27th day of April, 1912.

"W. T. Roberts,
"Attorney for Plaintiff.

(Seal)

"Attest: S. F. Haynie, District Clerk.

"By S. M. Parker, Deputy."

Defendant assails the validity of the constructive service on the following grounds: (1) That the affidavit for publication did not describe the land involved; (2) that the affidavit did not state, generally or specifically, that the plaintiff exercised any diligence to obtain service of summons on Isaac Leonard in the state of Oklahoma; (3) that the publication notice neither described the land nor stated the nature of the plaintiff's claim. The three years allowed by section 4728, Rev. Laws 1910, for Isaac Leonard to have the judgment opened expired before this suit was commenced.

(A) Was it necessary to describe the land in the affidavit for publication? Defendant relies upon Ballew v. Young, 24 Okla. 182, and City National Bank v. Sparks, 50 Okla. 648. Those were attachment cases in which a third party was permitted to intervene and assail the validity of the proceedings on the

ground that the affidavit for publication failed to describe the property and failed to show diligence to serve personal process in Oklahoma, and also on the ground that the publication notice failed to describe the property. This court held that the assault of the interveners on the proceedings was a collateral attack and that the judgment in each case was void because the affidavit did not describe the property attached, and the publication notice failed to state inferentially the nature of the judgment sought by the plaintiff. Those decisions have no application to a mortgage foreclosure case.

Section 4722, Rev. Laws 1910, with sections 4671 and 4672 read therein, authorizes service by publication in either of the following cases: (1) "for the recovery of real property, or of any estate, or interest therein, or the determination in any form of any such right or interest"; (2) for the partition of real property; (3) for the sale of real property under a mortgage, lien, or other encumbrance or charge; (4) to quiet title, to establish a trust in, remove a cloud on, set aside a conveyance of, or to enforce or set aside an agreement to convey real property; (5) in actions to establish or set aside a will; (6) in actions to obtain a divorce; (7) **"in actions brought against a nonresident of the state, or a foreign corporation, having in this state property or debts owing them, sought to be taken by any of the provisional remedies, or to be appropriated in any way"**; (8) in actions which relate to, or the subject of which is, real or **personal property** in this state, where any defendant has or claims a lien or interest, actual or contingent therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is a nonresident of the state or a foreign corporation; (9) in actions where the defendant, being a resident of Oklahoma, has departed with the intent to delay or defraud his creditors, or to avoid service of summons, or conceals himself with like intent.

These sections of the statute authorize service on nonresidents by publication in the first eight of the above actions, but no personal judgment can be rendered upon service by publication (Continental Gin Co. v. Arnold, 66 Oklahoma, 167 Pac. 613; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; 12 Ency. Pl. & Pr. 144; 17 Ency. Pl. & Pr. 35); and no personal judgment can be rendered against a nonresident mortgagor on service by publication (Jones on Mortgages (7th Ed.) sec. 1716; Wood v. Stanberry, 21 Ohio St. 142, and 9 Ency. Pl. & Pr. 487).

**"Actions brought against a nonresident of the state, or a foreign corporation, having in** **this state property or debts owing them, sought to be taken by any of the provisional remedies, or to be appropriated in any way"** (number 7 above), must be supported by an attachment or garnishment authorized by article 9, Code of Civil Procedure, or other provisional remedy impounding the nonresident's property, because in that class of cases the court's jurisdiction depends on a seizure of the nonresident's property. Waldock v. Atkins, 60 Okla. 38, 158 Pac. 587; Pennoyer v. Neff, supra. Article 9 of the Code of Civil Procedure authorizes the plaintiff in a civil action on a money demand to attach a nonresident's property in this state. Such plaintiff must make an affidavit stating the nature of his claim—that it is just, the amount he believes he ought to recover, and that the defendant is a nonresident of the state. That is the **attachment** affidavit. He may then get service on the nonresident by publication, provided he makes the affidavit provided for by section 4723, Rev. Laws 1910, and gives the notice required by section 4725.

The plaintiff's petition in an attachment case is not required to describe any property of the nonresident; he may sue on a promissory note or an open account and his petition is good without any reference to the property of the defendant. Actions mentioned in number 7, italicized above, are distinguished from actions in rem. Actions for the recovery of real property, etc., for the partition of real property, for the sale of real property under a mortgage, lien or other encumbrance, and actions to quiet title, establish a trust, remove a cloud on, set aside a conveyance of, or to enforce or set aside an agreement to convey real property, are actions in rem. (Robison v. Kind, 23 Nev. 330; Bernhardt v. Brown, 118 N. C. 700; Gould v. Garrison, 48 Ill. 258; 17 Ency. Pl. & Pr. 119); and a real estate mortgage may be foreclosed without a personal judgment for the mortgage indebtedness (Echols v. Reeburgh, 62 Okla. 67, 161 Pac. 1065; Tracy v. Crepin, 40 Okla 297, 138 Pac. 142; First National Bank v. Colonial Trust Co., 66 Oklahoma. 167 Pac. 985). In actions not in rem, but on a money demand against nonresidents, the order of attachment issues upon the affidavit provided for by section 4813, Rev. Laws 1910, and the property must be seized before the court acquires any jurisdiction. Waldock v. Atkins, 60 Okla. 38, 158 Pac. 587. The seizure of the nonresident's property in the ordinary action to collect a note or open account or other money demand is the basis of the court's jurisdiction, and the defendant served by publication is only bound by the judgment to the extent of the property levied on. 17 Ency. Pl. & Pr. 43, 44. The affi-

davit for **publication** is distinct and separate from the affidavit for the order of **attachment,** and while there is nothing in our statutes expressly requiring the affidavit for **publication** to describe the property, it is essential that such affidavit refer, directly or inferentially, to one or more of the causes of action designated in section 4722, and where neither the affidavit nor an attachment nor the plaintiff's petition describes (or is required to describe) any property of the nonresident, then it is reasonable to hold that the affidavit for publication in an attachment case should contain some description of the property impounded, as held in Ballew v. Young and City Nat. Bank v. Sparks, supra. In actions not in rem, but on a money demand against a nonresident, there is nothing in the proceedings to advise him what property plaintiff is subjecting to his demand unless the affidavit for publication or publication notice gives him this information. The attachment affidavit does not necessarily describe it. For this reason it is held in attachment cases that the affidavit for publication and publication notice should contain some description of the property seized, so the court's jurisdiction will affirmatively appear on the face of the record, especially so because the seizure of the property is the basis of the court's jurisdiction. But in a proceeding in rem—that is, to foreclose a real estate mortgage—**the plaintiff's petition describes the property** and is the initial basis of the court's jurisdiction. There being nothing in the statute expressly requiring either the affidavit for publication or the publication notice to describe the property sought to be reached by the plaintiff in a proceeding in rem, we find no reason why we should read into the statute any such requirement, especially on a collateral attack.

The Kansas Supreme Court in Allison v. Whitaker, 106 Pac. 1050, said that "the statute providing for service of summons by publication * * * does not require that either the affidavit or notice shall contain a description of the land," in an action to quiet title; and in Sharp v. McColm, 101 Pac. 659, said: "An affidavit for service by publication is not designed to convey any information to the defendant to be served"; that "its purpose is to bring upon the record the statutory foundation for the publication of a notice." That was a mortgage foreclosure case, and the affidavit was construed with reference to the petition to foreclose the mortgage. The court also stated: "When the affidavit in question disclosed that the action was one to foreclose a real estate mortgage and to sell land under such mortgage, a suf-

ficient basis for publication was established." In that case the land was misdescribed in the affidavit for publication, and, inasmuch as an exhibit to the petition described the land accurately, it was held that the failure to describe the land in the affidavit was not jurisdictional. In actions in rem—suits to foreclose mortgages, clear title to real estate, etc.—the Kansas Supreme Court holds in a number of cases that the affidavit for service by publication is sufficient against collateral attack without any description of the land. Sharp v. McColm, 101 Pac. 659; Allison v. Whitaker, 106 Pac. 1050; Ennis v. Grimes, 102 Pac. 454; Douglass v. Lieberman (Kan.) 57 Pac. 254; Pierce v. Butters, 21 Kan. 125; Shippen v. Kimball, 47 Kan. 73, 27 Pac. 813.

The affidavit assailed in this case states that defendants are indebted to plaintiff in the sum of $200 and interest, as shown by a promissory note executed by defendants, that plaintiff therein had filed in the district court a petition against defendants showing said indebtedness, and that it was secured by a mortgage lien on certain real estate therein described. The petition to foreclose specifically describes the land, necessarily so, and also the debt secured by the mortgage, and prays for foreclosure and sale. All the possible defects in the affidavit are supplied by reference to the petition, and inasmuch as the affidavit expressly refers to the petition, which is also verified, we hold that the affidavit and petition should be construed together in a proceeding in rem against the nonresident; and especially is this true inasmuch as the affidavit is not published, and is not in an action in rem the initiatory step in the acquisition of jurisdiction. In Sharp v. McColm, supra, the defects in the affidavit were cured by reference to the petition and exhibits thereto. In Miller v. Eastman, 27 Neb. 408, 43 N. W. 179, defects in the affidavit for publication in an attachment suit were supplied by reference to the affidavit for attachment. The opinion in that case says: "The court will look at the entire record, and, if it appear from all the affidavits before the court issuing the attachment that the essential facts to confer jurisdiction were duly sworn to therein, the judgment will not be declared void." Also Jones v. Danforth. (Neb.) 99 N. W. 495; Bray v. Marshall, 75 Mo. 327.

12. Neither is the affidavit for publication defective because it fails to state that plaintiff exercised due diligence to obtain personal service in this state. An affidavit for service by publication alleging that the defendant is a nonresident of the state and that plaintiff is unable to obtain service of summons in Oklahoma upon the defendant, is sufficient

without the additional allegation that plaintiff exercised diligence to obtain personal service. City National Bank v. Sparks, 50 Okla. 648; Ballew v. Young, 24 Okla. 182; Continental Gin Co. v. Arnold, 66 Oklahoma, 167 Pac. 613; Washburn v. Buchannan, 52 Kan.. 41, 34 Pac. 1049; Harvey v. Harvey (Kan.) 118 Pac. 1038; Coombs v. Crabtree, 105 Mo. 292; DeCorvet v. Dolan, 7 Wash. 365; Furnish v. Mullan, 76 Cal. 646; Anderson v. Goff, 72 Cal. 65.

13. The failure of the publication notice to describe the land involved in an action in rem or to state that the mortgage to be foreclosed is a real estate mortgage, or to state the amount of the note or debt secured by the mortgage, is not fatal on a collateral attack on the jurisdiction of the court in the foreclosure proceedings. There was a publication notice; that notice stated correctly the court in which the case was pending, the number of the case on the docket, the name of the plaintiff and the names of the defendants; that the plaintiff had sued the defendants "in the above named court upon debt and foreclosure of mortgage," and must answer "the petition filed herein by said plaintiff on or before the 13th day of June, 1912, or said petition will be taken as true, and a judgment for said plaintiff in said action for foreclosure of mortgage will be rendered accordingly." We have already seen that a mortgage may be foreclosed in this state without any personal judgment for the mortgage indebtedness. Echols v. Reeburgh, 62 Okla. 67, 161 Pac. 1065; Tracey v. Crepin, 40 Okla. 297, 138 Pac. 142; First National Bank v. Colonial Trust Co., 66 Oklahoma, 167 Pac. 985. Under Pennoyer v. Neff, 95 U. S. 714, 25 L. Ed. 565, and allied cases, no deficiency judgment can be rendered against a nonresident on constructive service of process. We have already seen that the foreclosure petition is the initiatory step in the acquisition of jurisdiction, that the affidavit for publication is the second step, and the publication notice is the third and last step required to confer jurisdiction. While it is true that secton 4725, Rev. Laws 1910, requires the publication notice "to state the nature of the judgment which will be rendered," this may be stated briefly and in very general terms. As said by the court in Sharp v. McColm (Kan.) 101 Pac. 660, "the nature of a judgment may be briefly stated in a few general terms, or the statement may be elaborated, to cover every detail with the utmost certainty, including the description of real estate to be affected"; and after reviewing former Kansas decisions it was further stated: "From these decisions it is apparent that, in cases of collateral attack, the nature

of the judgment required to be stated in the notice is its general nature, and not the precise character of all the minutiae of its provisions," and "if the defendant be advised that land will be sold under a mortgage or under an attachment or will be partitioned, or that the title to the land will be quieted, or the like, jurisdiction to proceed is complete," and "every subsequent act of the court taken pursuant to the petition is but the exercise of jurisdiction, which may extend to any tract of land made the subject of the action by the **petition.**"

About the only difference between the publication notice in Sharp v. McColm and the one in this case is that the notice in the Kansas case stated that the petition was filed to foreclose a mortgage on real estate, while in this case the notice merely says "a mortgage", without specifying whether on real or personal property. But the notice in this case clearly referred to the petition filed to foreclose the mortgage, and the number of the foreclosure case in the district court of Carter county, and by that reference the notice was sufficient to warn the defendant that a mortgage foreclosure suit covering his **property** had been commenced against him in the district court of Carter county, Oklahoma, in case No. 1408. On collateral attack we will treat the publication notice, containing material elements required by the statute, sufficient if that which is uncertain and omitted therefrom may be made certain by reference to the affidavit for publication or the original petition to foreclose the mortgage. We will apply the following principle announced by Van Fleet on Collateral Attack, section 774:

"The papers and entries in a judicial proceeding, from the summons or initiative paper to the final judgment or decree of confirmation, being one single instrument, in a col-lateral **attack** on account of a misdescription of land, the same rules are applied as in the construction of grants, and if there are certain things which identify the corpus or things intended to be affected or sold, the addition of a false or mistaken description will not vitiate it, as was expressly decided by the Supreme Court of Arkansas."

The doctrine above stated by Van Fleet was applied by the Kansas Supreme Court in Sharp v. McColm, supra, and Rogers v. Rogers (Kan.) 143 Pac. 408. In a collateral attack based on defects in the publication notice, the failure to describe the land is not a fatal defect in a proceeding in rem against a nonresident. Allison v. Whitaker, (Kan.) 106 Pac. 1050; Shultz v. Stiner (Kan.) 155 Pac. 1073; Sharp v. McColm (Kan.) 101 Pac. 659; Doyle v. Hays Land & Inv. Co. (Kan.)

102 Pac. 496; Barrett v. Struble (Kan.) 46 Pac. 943.

The statute does not expressly require the publication notice to state the amount of the mortgage debt, but merely "the nature" of the judgment. The failure of the notice to state the amount of the mortgage note is not fatal on a collateral attack. Holland v. Adair, 55 Mo. 40. But there was a publication notice, and it did state material facts. There is a vast difference in the status of a judgment based upon no service of process and one based upon defects in the service of process. Defects in the service of process must be taken advantage of in direct proceedings and furnish no ground for collateral attack on the judgment, especially when it appears that the court whose judgment is assailed decided that the service of process was sufficient. 19 Ency. Pl. & Pr., pp. 704-707, inclusive; 17 Ency. Pl. & Pr., p. 120; Stevermac Oil & Gas Co. v Dittman, 245 U. S. 210.

The authority to hear and determine a case is jurisdiction to try and decide all the questions involved in the controversy, including the power to pass upon the sufficiency of the service of process. Quarl v. Abbott (Ind.) 1 N. E. 476. Jurisdiction to appoint an administrator of the estate of a living person (Griffith v. Frazier, 8 Cranch, 9), or condemn as a lawful prize a vessel that was never captured (Rose v. Himely, 4 Cranch, 241, 269), has never been conferred upon any court. But jurisdiction to base a mortgage foreclosure decree on constructive service of process against a nonresident is vested in the district courts of this state, and in the exercise of that jurisdiction those courts must pass first upon the sufficiency of the constructive service. The filing of the petition to foreclose, the affidavit for publication, and the publication notice set in motion the jurisdiction of the court, and the jurisdiction thus invoked includes the power to pass upon the sufficiency of the steps taken by the plaintiff to invoke its jurisdiction. If this be not true, then the division line between direct and collateral attack on judgments has been abolished. As said by Judge Sanborn in Foltz v. St. L. & S. F. R Co., 60 Fed. 317, the "jurisdiction of the subject matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power," and "to determine every issue within the scope of its authority, according to its own view of the law and the evidence," and, "whether its decision is right or wrong," it "is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud."

The district court of Carter county in the foreclosure case had jurisdiction to decide whether or not the publication notice should be construed with reference to the affidavit for publication and the foreclosure petition—had jurisdiction to test the sufficiency of the publication notice according to the rules prescribed by the statutes of this state. Isaac Leonard is not now before the court in this case, and if the district court in the foreclosure case did not have jurisdiction to pass upon the sufficiency of the publication notice, because he was not personally summoned, how can this court now have jurisdiction to pass upon the sufficiency of the notice? Some court must decide whether or not there was jurisdiction to render the foreclosure judgment, and the court rendering the judgment had jurisdiction to foreclose mortgages, and in exercising that jurisdiction it was absolutely necessary to pass on the sufficiency of the constructve service by publication.

In Garrett v. Struble, 46 Pac. 943, the Kansas court held that if there was a total failure to state in the notice any material matter required by the statute, the service was void and subject to collateral attack, but where there was not such an entire omission of material matter from the notice, the service was merely voidable. In Cushing v. Cumings, 72 Oklahoma, 179 Pac. 762, Mr. Justice Sharp held that "the attack being made in a collateral proceeding, though the notice was not complete, or although irregular and defective, will not have the effect of rendering the decree a nullity," and stated this rule is applicable to cases where the judgment is based on constructive service by publication, as well as in cases of personal service, and observed that "it has been said that good reason exists for being more liberal in cases of constructive notice than in those where the service is personal, for the defendants in the former class of cases are entitled, as of right, to open the judgment." In that case, Mr. Justice Sharp cites, among other cases, Essig v. Lower, 120 Ind. 239, 21 N. E. 1090, which announces the proper rule. The Indiana court said.

"This is a collateral attack upon these decrees; and, unless they are wholly void, the attack must fail though they may be erroneous. Had the court proceeded in these cases without any notice, then it would be clear that there was a want of jurisdiction, but it clearly appears, by the special finding, that there was some notice, and that such notice was based upon an affidavit. It became, therefore, a question to be determined by the courts in which these proceedings were pending as to whether such affidavits and notices were sufficient. The court having determined that question in favor of jurisdiction, such

determination is conclusive as to all the parties when collaterally attacked."

Black on Judgments (2nd Ed.) vol. 1, sec. 274, says:

"Where a statute confers general jurisdiction over a class of cases upon a particular tribunal, its decision upon the facts essential to the existence of jurisdiction in a particular case belonging to the class will be conclusive as against collateral attack. So when a notice which is defective, or the service of which is informal, has been adjudged sufficient, the judgment rendered thereunder will not be held void in a collateral proceeding. And in case of an insufficient service of notice, if the court decides the question of jurisdiction erroneously, the judgment will be voidable, but binding until reversed on appeal. The determination of the question of the sufficiency of the affidavits presented to the court as proof of the service of a summons and the failure of the defendant to answer, is a judicial determination of the question of jurisdiction, and therefore binding until set aside or reversed."

This is in accord with the prior decisions of this court in Rice v. Woolery, 38 Okla. 199; Continental Gin Co. v. DeBord, 34 Okla. 66; Rice v. Theimer, 45 Okla. 618, and Blackwell v. McCall, 54 Okla. 96; see, also, Boswell v. Sharp, 15 Ohio 447; Van Fleet on Col. Attack, sec. 388; Hotchkiss v. Cutting, 14 Minn. 537; 23 Cyc. 1088.

Of course a publication notice to one or more defendants named therein cannot be treated as any notice to other nonresident defendants not named therein.

The publication notice in this case named the parties correctly; it was a publication notice, though defective. The foreclosure decree adjudged the notice sufficient, and that adjudication cannot be impeached in a collateral proceeding if there be enough in the publication notice to call for construction, and construction means the application of the law to the facts stated. Hogue v. Corbit, 156 Ill. 540, 47 Am. St. Rep. 232; Miller v. White, 46 W. Va. 67, 76 Am. St. Rep. 791.

14. On the demurrer to the answer we are treating the transcript of the record 'in the foreclosure case as the judgment roll, but whether it is such in fact may be disputed when this case comes for trial on the answer. The judgment roll at common law signified a roll of parchment upon which the proceedings and transactions of a court were entered by its officers, and it was then deposited in its treasury in perpetuam rei memoriam, but since paper has universally supplied the place of parchment the roll has fallen into disuse. The equivalent of the judgment roll, however, is provided for by

sections 5144 to 5146, inclusive, Rev. Laws 1910. Those sections direct the clerk upon order of the court to make a complete record of every case as soon as it is finally determined, such record to contain "the petition, the process, the return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court." When we have spoken in this opinion of a judgment void on its face, we mean a judgment whose invalidity is disclosed from an inspection of such a record—the judgment roll. See 14 Standard Proc., p. 744.

15. The judgment in the foreclosure case was entered on September 14, 1912, and this suit was commenced on October 18, 1916, more than three years after the rendition of the foreclosure judgment. The court sustained plaintiff's demurrer to that part of defendant's answer averring the deed executed by the sheriff to the purchaser at the foreclosure sale was void, because, as averred, "said bid was never paid to the sheriff, never paid to the court clerk of this court, and that said judgment against the defendants in said case remains unsatisfied." If the purchaser at the foreclosure sale did not pay his bid, then he could not claim to be the equitable assignee of the mortgage, and the defendant owes him nothing. The mortgage foreclosure sale was for cash. An officer selling property under a decree can sell such property on such terms, and such terms only, as are provided by the decree and the law in force governing such sale, which is incorporated into and made a part of such decree, and the officer has no authority to sell on credit or to accept in payment of the bid anything other than lawful money, unless otherwise expressly authorized by the decree or the law in force governing such sales. As between the mortgagor and the purchaser who refuses to pay his bid at a cash sale, no title passes under a deed executed by the sheriff, and the mortgagor has a right to have the property resold to foreclose the mortgage. Hooper v. Castetter (Neb.) 63 N. W. 135; International Mfg. Co. v. Brammer Mfg. Co., 138 Fed. 396; Phelps v. Jackson, 31 Ark. 272; Allison v. Crummey, 64 Oklahoma, 166 Pac. 691; Langley v. Ford, 68 Oklahoma, 171 Pac. 471; Glory v. Bagby, 79 Oklahoma, 188 Pac. 881.

Whether a deed executed by the sheriff and confirmed by the court is sufficient title to support a plea of bona fide purchaser filed by a vendee of the sheriff's vendee is a question upon which we express no opinion, as that point has not yet been raised in this case other than in the defendant's allegation that

plaintiff took said land subject to all defendant's defenses.

16. This cause is reversed and remanded to the district court with directions to overrule plaintiff's demurrer to that part of defendant's answer alleging no summons was served on her in the foreclosure sale, and alleging that Cochran, the purchaser at the sale, has not paid his bid, and to allow the parties to make up the issues in that court as a court of equity; relief to defendant being conditioned on her showing no laches or negligence in attacking the foreclosure judgment for want of service of process on her and according to the equitable principles herein laid down. She will be allowed to amend her answer to meet these requirements.

HARRISON, JOHNSON, McNEILL, HIGGINS, and BAILEY, JJ., concur.

RAINEY, C. J., dissents from that part of the opinion which holds extrinsic evidence admissible to contradict the recital in the judgment of service of process though no fraud is charged.